CARLTON GRAVES and Another v. EDWARD W. BACKUS and Another.[1]

November 3, 1897.

Nos. 10,707—(75).

**Appeal—Sufficiency of Evidence.**
*Held*, that the evidence justified the verdict.

**Sale of Logs—Stay after Verdict—Denial on Conditions.**
After verdict against the defendants for the purchase price of personal property sold to them by the plaintiffs, third parties asserted title to part of the property, and thereupon the defendants asked for a stay of further proceedings in the action until these claims were determined. The court denied the stay on condition that plaintiffs execute to defendants a bond, with sureties, conditioned to indemnify them against such claims to the extent of the amount of the judgment which should be entered on the verdict. *Held*, that there was no error.

**Same—Expiration—Effect of Appeal.**
The order to show cause why this stay should not be granted provided that all proceedings in the action be stayed "until the further order of the court." *Held*, that this temporary stay, pending the hearing on the order to show cause, expired by its own limitation with the order of the court denying the permanent stay. Even if the order denying the permanent stay was appealable, an appeal from it and the giving of a supersedeas bond would not continue in force the temporary stay.

Appeal by defendants from a judgment of the district court for Hennepin county entered on a verdict of $2,613.65 for plaintiffs, after a trial before Smith, J., and a jury. Affirmed.

*George H. White*, for appellants.

*Choate & Merrill*, for respondents.

MITCHELL, J.

This action was brought to recover an alleged balance due plaintiffs for logs sold and delivered to the defendants. Both under the pleadings and upon the trial there were but two issues: First, whether the original contract (Exhibit A of the complaint) was modified in the summer of 1894 by changing the place of the future delivery of logs from the limits of the Mississippi & Rum River Boom

1 Reported in 72 N. W. 811.

Company's boom at Brainerd to a point immediately below the Pokegama dam on the Mississippi river; and, second, what amount of logs, in all, did plaintiffs deliver to the defendants in accordance with the terms of the contract? If the contract was modified as to the place of delivery, this would include all the logs delivered at both of the places mentioned; if not so modified, then only logs delivered within the limits of the boom at Brainerd. Defendants' counterclaim for money alleged to have been overpaid to the plaintiffs entirely hinged on the determination of these two issues; there being no dispute as to the price of the logs, and substantially none as to the amount paid the defendants by the plaintiffs. The execution of the original contract, and its subsequent modification as to the time of performance, were admitted in the answer.

The evidence was very voluminous, and it would be impossible to discuss it fully within any reasonable space, and it would subserve no good purpose to do so. Suffice it to say that, after a perusal of the entire record, we are of the opinion that upon both issues it justified the verdict. The evidence as to the modification of the contract as to the place of delivery consisted of the conflicting testimony of the plaintiff Graves and the defendant Backus, and made a case for the jury.

The evidence produced by the plaintiffs to prove the amount of logs delivered under the contract consisted of the "bank scales" made by the deputy surveyor general, showing the amount of logs cut and banked, and of testimony tending to show that the plaintiffs made a "clean drive" of all these logs from the place where they were banked down to the Pokegama dam, while the evidence on the part of the defendants tended to show that the plaintiffs did not make a clean drive, but that a very considerable number of the logs were left along the streams above Pokegama. In fact, most of the evidence of both parties was directed to that point.

The contract does not in so many words state whether, on the final settlement between the parties, the plaintiffs were to be paid according to boom scale or according to bank scale. The provisions as to the first and second payments clearly imply that they were to be made according to the bank scale, and the evidence shows that the parties used the bank scale as the basis for ascertaining the amount

of these payments. That the bank scale was contemplated by the parties is corroborated by the fact that the log marks were transferred to the defendants. If the logs were to be paid for according to the bank scale, as is usual in contracts of this kind, then plaintiffs would be entitled to be paid according to that scale for all logs cut and banked, provided they subsequently made a clean drive of them, according to the usual and approved manner of driving logs. But it is unnecessary to decide this question. The case was tried and by the court submitted to the jury, upon the theory that plaintiffs were only entitled to pay for the amount of logs actually driven to the so-called place of delivery, and that all logs which for any cause were left above that point must be excluded from the calculation. Even under this construction of the contract the verdict of the jury as to the amount of logs actually delivered below Pokegama dam was justified by the evidence. The verdict shows that the jury must have deducted from the bank scale about 46,000 feet for logs left above that point.

It is urged in support of the objection to the sufficiency of the evidence, as well as the objection to the competency of the deputy surveyor general's scale bills, that the logs scaled were not identified as the same logs for which the plaintiffs sought to recover, and that there was no evidence that all the logs thus scaled on the bank were ever put afloat in the drive. It may be true that no witness testified directly, in so many words, to either of these facts, but we think that counsel is clearly in error in claiming that there was no evidence on those points. It clearly appears all through the evidence that the logs driven were those which had been previously scaled on the bank, and a clean drive of logs previously banked is wholly inconsistent with the idea that part of them were left where banked.

2. Exhibit A in the evidence was an agreement between the Mississippi & Rum River Boom Company and several Minneapolis lumbermen, including defendants, by which the latter agreed to accept their logs, put in above Pokegama dam, when they were sluiced over said dam, instead of having them driven down to Brainerd. The plaintiff Graves, having seen this agreement in the office of the boom company, went to defendant Backus, and, as he testified, told him that he had seen this agreement, and asked him if that con-

tract was all right, and should apply to "our logs" (referring to the logs plaintiffs were getting out for defendants), and that Backus, replied that "it was all right; that it did." Exhibit A was then offered and admitted "as a part of that conversation." In this there was no error. Of course, what had been agreed between the boom company and the defendants was, by itself, incompetent; but, there being evidence that the defendants consented that the terms of that agreement should apply to their contract with plaintiffs, it was proper to introduce Exhibit A to show what those terms were. There is nothing in the record to show that the instrument introduced in evidence was not the original, except that the word "Copy" appears at the top of the exhibit contained in the settled case. Moreover, an objection that offered evidence is incompetent, irrelevant, and immaterial does not cover the point that it is secondary.

3. If the bank scale was to determine the rights of the parties, then the testimonoy of the witness Terry that the logs "were driven in the usual manner in that vicinity" was both material and competent, otherwise, although immaterial, its admission was error without prejudice.

4. What has been already said as to the sufficiency of the evidence fully answers the objection to the admission in the evidence of the scale bills. The objection was not to the scale bills themselves, but that the logs scaled were not identified as the logs driven, or as the logs for which plaintiffs sought to recover. Neither was there any error in the admission of the transfer of the log marks by plaintiffs to the defendants.

5. The counterclaim of defendants was for money overpaid to the plaintiffs in reliance on their false representations as to the amount of logs delivered; and the charge of the court, that to entitle them to a recovery on this counterclaim the defendants must show that such representations were made willfully and with intent to defraud, is assigned as error. This instruction was probably incorrect, but it is unnecessary to consider it, for the reason that counsel on the argument conceded that the defendants had failed to make out a case for any recovery on their counterclaim. Moreover, the fact that the jury found a verdict for over $2,600 in favor of the plaintiffs shows that they never reached the question of the counterclaim.

6. After verdict, but before judgment was entered on it, the defendants obtained an order on plaintiffs to show cause why a stay of further proceedings should not be granted until certain claims of third parties to part of the logs were determined. This order further provided that all proceedings in the action be stayed "until the further order of the court." Upon the hearing of the order to show cause the court denied the application for a stay, and discharged the order, on a condition, among others, that the plaintiffs execute to defendants a bond in the penal sum of $5,000, with two sureties to be approved by the court, conditioned to indemnify the defendants to an amount not exceeding the amount of the judgment to be entered against them on the verdict, on account of any claim against said logs or by reason of the failure of the title thereto. The plaintiffs or their assignors complied with these conditions; but the defendants attempted to appeal from the order denying their application for a stay, and gave a supersedeas bond. Subsequently the clerk, upon the order of the court, entered judgment on the verdict.

The refusal of the court to grant a stay of proceedings is assigned as error. The most that can be claimed for the defendants is that the matter of granting a stay was addressed to the sound discretion of the court. Upon the showing made by the affidavits and counter affidavits, there was no abuse of discretion in denying the stay,—at least, upon the conditions imposed.

It is also urged that it was error to order judgment on the verdict pending the appeal from the order denying the stay. Counsel's idea seems to be that this appeal kept in force the temporary stay "until the further order of the court," contained in the order to show cause. To this there are two conclusive answers: First, the temporary stay pending the hearing expired, by its own limitation, upon the discharge of the order to show cause; and, second, that the order denying the stay of proceedings was not an appealable order, and hence the attempted appeal was a mere nullity.

This covers all the assignments of error worthy of special notice, and the judgment is affirmed.