FULLER v. McCALLUM & ROBINSON, Inc., et al.—118 S. W. (2d) 1028.

Western Section.   December 11, 1937.

Petition for Certiorari denied by Supreme Court, April 2, 1938.

144

Canale, Glankler, Loch & Little and H. H. Barker, all of Memphis, for appellants.

Andrew J. Donelson, of Memphis, for appellee.

SENTER, J. The original bill in this cause was filed by Mrs. Ada Norfleet Fuller against McCallum & Robinson, Inc., and George P. Phillips and wife, Blanche E. Phillips, as the defendants. The defendants, George P. Phillips and wife filed an answer and a cross-bill. In the cross-bill they joined as cross-defendants, McCallum & Robinson, Inc., and E. G. Willingham.

The original bill sought to recover of George P. Phillips and wife, Blanche E. Phillips, and McCallum & Robinson, Inc., the deficiency remaining after the proceeds from a mortgage foreclosure sale had been applied to an indebtedness of $30,000 represented by certain notes executed by Phillips and wife to the executor and trustee of the estate of Willie T. Norfleet, the mother of complainant, and secured by a trust deed on certain property located on Front Street in Memphis, Tennessee. Mrs. Fuller was the beneficiary of the trust, and it was her funds that had been loaned to Phillips and wife and secured by the mortgage on the Front Street property. This money was borrowed by Phillips and wife from J. C. Norfleet, the executor and trustee, who was the father of complainant, and it was used by Phillips and wife in the purchase by them of said Front Street property, for which Phillips and wife paid $45,000.

This loan was represented by five promissory notes, each for $1,000 and one note for $25,000, all dated June 10, 1925. The five notes for $1,000 each were due and payable serially and the $25,000 note due on the 10th day of June, 1935. Interest notes, one for the sum of $750 due June 11, 1935, and one for the sum of $150 due June 11, 1935, were executed at the same time. The trust deed or mortgage to secure these notes was payable june 11, 1935.

Prior to the maturity of the five $1,000 notes, the maturity dates thereof were extended, by agreement, to the 11th day of June, 1935, and Phillips and wife executed interest notes on the extended notes.

Interest on the indebtedness was paid by the cross-complainants, Phillips and wife, up to the 11th day of December, 1927. No part of the principal was paid by them, nor was there any interest paid by them after December 11, 1927.

On May 19, 1928 Phillips and wife, through Ralph E. Chew, Jr., who was at that time engaged as a real estate agent in the city of Memphis, entered into a written contract and agreed to sell and convey this Front Street property to McCallum & Robinson, Inc., for the sum of $54,000, $24,000 to be paid in cash and McCallum & Robinson to assume the payment of the $30,000 encumbrance debt above referred to. It was further agreed in the tract that McCallum & Robinson pay the sum of $5,000 as earnest money. This $5,000 was paid to Chew and out of which he

was to obtain his commission in the event McCallum & Robinson failed to complete the purchase within the time specified in the contract; and in the event the sale was completed the $5,000 to be treated as a payment on the cash payment of $24,000.

It was further stipulated in the contract that the seller agreed to furnish complete abstract of title to the purchaser, McCallum & Robinson, within five days of the date of the contract, and the purchaser agreed to examine or have examined the abstract within ten days from that date. The contract then provided:

"It is understood and agreed that if the title is not good and cannot be made good within 90 days after written notice that title is defective then this earnest money is to be paid back to McCallum & Robinson or order; but if the title is good and the property not taken, or for any other reason the purchaser does not comply with this contract this earnest money is to be forfeited to R. E. Chew, Jr. for services rendered. It is expressly understood and agreed, however, by both parties to this contract that such forfeiture shall in no way affect the rights of either party to enforce the specific performance of this contract. Both parties to this contract agree that the signing hereof constitutes a sale, and the owner or vendor hereby warrants the title to said property, and agrees that in case the final closing of the sale is defeated through any cause the seller will pay the amount as stated below to R. E. Chew, Jr. as commission or as a fee for his services.

"It is agreed that the seller hereby accepts the said purchaser herein, and R. E. Chew, Jr., is relieved from all liability as to the purchaser being ready, willing and able to comply with this contract.

"It is further agreed that the purchaser has examined the property herein described, and has entered into this agreement upon his own estimate of the value of the property, and does not rely upon any representation made by any agent.

"The validity of this contract is not dependent upon the signature of any person or persons not named herein."

The contract was signed by Chew as agent and McCallum & Robinson as the purchasers, and at the bottom of the contract Phillips and wife signed the following:

"We agree to sell the property above described upon the terms of the above contract which we hereby ratify and confirm, and we further agree to pay R. E. Chew, Jr. $1,820.00, which is the agreed commission for negotiating this contract."

After describing the property, the contract contains the further provision.

"We have this day sold and agreed to convey to McCallum & Robinson or any person they may name for the sum of Fifty-four Thousand ($54,000.00) Dollars upon terms as follows: Twenty-

four Thousand ($24,000.00) Dollars cash and the assumption of an indebtedness of Thirty Thousand ($30,000.00) Dollars secured by a mortgage on the property herein described. 1928 taxes prorated. Cash to be paid upon presentation of a good and valid warranty deed.''

Up to this point there is no conflict in the evidence.

It further appears without conflict in the evidence that pursuant to the terms of the contract an abstract of title was prepared for the sellers, showing a good title except the encumbrance debt of $30,000 referred to in the contract of sale, and payment of which debt had been specifically assumed by the purchasers, McCallum & Robinson, in the contract of sale and the title thereto guaranteed. After this contract of sale was entered into between Phillips and wife and McCallum & Robinson, McCallum & Robinson interested Mr. Willingham to take a one-half undivided interest in the property on the same terms on which the same had been purchased. However, the evidence shows that Willingham did not see the contract at the time he agreed to buy in with McCallum & Robinson. This feature of the trade was negotiated by Robinson of McCallum & Robinson, Inc. It appears that Robinson merely stated to Willingham the property to be purchased under the contract and the consideration of $54,000, and also the due date of the mortgage debt against the property, but according to the testimony of Willingham, Robinson did not tell him that the contract provided that the purchasers were to assume the mortgage debt, but that he supposed that it was simply a purchase subject to the mortgage debt.

Phillips and Wife and Chew were called to the Fidelity Bank & Trust Company offices to execute the deed pursuant to the contract, and then learned that Willingham was to be one of the purchasers under an agreement between Willingham and McCallum & Robinson. As above pointed out, the contract provided that McCallum & Robinson were the named purchasers, and it further provided that the deed would be made to McCallum & Robinson or ''any person they may name for the sum of $54,000.00,'' $24,000 to be paid in cash and the mortgage of $30,000 to be assumed by the purchasers, and the purchasers to pay the 1928 taxes prorated.

There is a decided conflict in the evidence as to what occurred at the time the cross-complainants, Phillips and wife, were notified that the trade was ready to be closed and that the deed and other papers were ready for execution. The trade was closed in the Title Department of the Fidelity Bank & Trust Company. It appears that Captain W. B. Murrah was the attorney in charge of the Title Department of the Fidelity Bank & Trust Company and had his office there, and the conference for the closing of the transaction was held in the office of Captain Murrah, although it does not appear that Captain Murrah was present or that he had any-

thing to do with closing the transaction. It appears that Mr. Herbert Gannaway, an attorney in Memphis, Tennessee, and connected with the Title Department of the Fidelity Bank & Trust Company, prepared the papers closing the transaction.

There is a conflict in the evidence as to who was present at the time the deal was actually closed and the deed executed. Mr. Gannaway and Mr. Willingham and Phillips and wife were present and there is some dispute as to whether or not Mr. Robinson was present, but we think it clear from the evidence that he was not present at the time the transaction was closed, but that he had sent his bookkeeper and accountant to take his check covering his part of the cash payment. It does not appear whether or not Mr. Lang, the bookkeeper, remained and was present at the time the deed was actually executed by Phillips and wife. Mr. Lang died before his deposition could be taken. Mr. Robinson testified that he sent Mr. Lang to meet the parties at the Fidelity Bank & Trust Company with a check for his part of the cash purchase price. Mr. Willingham testified that Robinson was present during the conference. Robinson's deposition was taken but he was not asked the question whether or not he was present in person, but he did testify that his bookkeeper and accountant, Mr. Lang, was sent to carry the check. Phillips testified that Robinson was not present at any time while they were there. Mr. Chew testified that he did not get down there until after the trade was closed and the deed executed, but he merely went down there to take the $5,000 check and to receive his part of the check for his services. Mr. Gannaway testified that Robinson was not present. So we think it clear that the only persons actually present when the deal was closed were Willingham, Gannaway, Phillips and wife.

Prior to the meeting Mr. Gannaway had procured from the Fidelity Bank & Trust Company files a copy of the contract for the sale of the property betweeen Phillips and wife and McCallum & Robinson, and from which he prepared a deed, which deed was drawn according to the provisions of the contract, and which recited as the consideration $10 and other valuable consideration, and specifically provided that the property was unencumbered except for the $30,000 mortgage debt, the payment of which was assumed by the purchasers. This deed conveyed to McCallum & Robinson a one-half interest in the property and to Willingham a one-half interest in the property described in the contract and in the deed as the lot and building located at No. 4 Front Street, Memphis, Tennessee, the lot being 25 feet by 72 feet.

Mr. Willingham was either the president or chairman of the board of directors of the Fidelity Bank & Trust Company and Mr. Gannaway was an attorney connected with the Title and Guaranty Department of the same bank. It was not explained why the con-

tract was in the files of the bank, since Mr. Willingham was not a party to the contract of sale, but became interested at the instance of Mr. Robinson in the deal.

From this point on there is a decided conflict in the evidence as to what occurred in this conference when the transaction was closed and the deed executed and delivered. Mr. Gannaway, who by the way, had represented Mr. Willingham in many of his real estate deals and in closing deals for Mr. Willingham, and a witness for the cross-defendants. Willingham, and McCallum and Robinson, testified that although this transaction occurred about eleven years before he testified, and that although he had handled many real estate transactions and had closed many real estate deals since that time, that for certain reasons stated by him he remembered the details of this transaction. He testified in substance that after he had prepared the first deed and first settlement sheet and had shown it to Mr. Willingham that Mr. Willingham objected to the provision in the deed whereby the vendees were to assume the mortgage debt and insisted that the deed be changed so as to provide that they purchase the property subject to the mortgage debt, and that by direction of Mr. Willingham he changed the deed as directed by Willingham, or rather prepared another deed and another settlement sheet, and that the second deed recited that the conveyance was made subject to the mortgage debt, in place of reciting that the vendees assumed the payment of the mortgage debt as provided in the contract of sale. He does not testify that this objection to the deed was made in the presence of Phillips and wife. His testimony would indicate that this change was made before Phillips and wife reached the office for the conference.

Mr. Willingham admitted that his recollection of the details of the transaction was vague and indefinite. However, he testified that Phillips and wife were present when he entered the conference room; that he was then handed the first deed which Gannaway had prepared and the settlement sheet, and when he read the deed whereby the vendees assumed the payment of the mortgage debt and also the first settlement sheet, he objected to it and declined to accept it in that form. He demanded of Gannaway that a new deed and a new settlement sheet be prepared, which did not provide that the payment of the mortgage debt was assumed by the purchasers. He testified that this occurred in the office and that Phillips and wife were present. He testified that they heard the objection made by him. However, he stated that his objections were made to Gannaway and not to Phillips and wife, but that Phillips and wife were in the room. On cross-examination he stated that Phillips and wife heard the objections which he made to Gannaway because they were in the room, and that he spoke in tones sufficiently loud for them to have heard. However, he ad-

mitted that he could not testify that they did hear the statement made. He did testify, however, that Phillips, representing himself and his wife, agreed to the change.

So we find a decided conflict in the evidence of Gannaway and Willingham as to whether or not Phillips and wife were present at the time Willingham made the objection. We gather the impression from Gannaway's statement that this occurred before Phillips and wife entered the room and that the new deed and the new settlement sheet were both prepared after Willingham made the objection and before Phillips and .wife reached the conference room.

Mr. Gannaway testified that he distinctly remembered the whole transaction and gave his reasons for remembering it as to the details. The solicitor representing Willingham in the taking of the deposition of Gannaway, after asking a few formal questions, stated to the witness that it would perhaps save time if the witness would proceed to state his recollection of the incident and all that occurred, and in answering, Mr. Gannaway went into considerable detail and explanation as to why he remembered the transaction so well. His answer was as follows:

Q. 7. "To save time and questions suppose you go ahead in your own way and tell all you know about your entire connection with this transaction."

A. "In the first place I should say that ordinarily I don't remember the details of real estate transactions. I have so many that usually they pass out of my mind. But this particular trade sticks in my mind and I will perhaps always remember it, because of two or three things that happened that were unusual. One was I had to draw the papers the second time after the parties met to close the trade, and I always feel like I haven't done the job right when I have to do that. I always like to draw them in such a manner they won't have to be changed. Another thing was Mr. Willingham took me to task, rather criticized me in making him and McCallum and Robinson assume an indebtedness of $30,000.00 on the property, when I felt like his criticism was unjust. I had drawn the deed in accordance with the contract, and that incident fixed itself in my mind. Then perhaps there was another reason why I recall it so plainly. I possibly thought the property wasn't of any great value—I don't mean of any great value, but I mean I didn't think it was worth two or three times what they were paying for it, and they thought they were getting a great bargain. These though are the things I remember about the transaction."

Mr. Willingham had testified positively that Mr. Robinson was present as well as the other parties named by him. He testified that he addressed his objection to Gannaway, but stated that it was in a tone of voice sufficiently loud for Phillips and his wife to have

heard him make the objection, and stated positively that at the time he made the objection to Gannaway that Phillips and his wife were then present in the room; that the room was about 14 feet by 14 feet square; that after he made the objection Phillips stated that it was all right to make the change and he then had Mr. Gannaway to dictate the deed making the change to the stenographer. On this subject he testified as follows:

Q. 13. "Go ahead, Mr. Gannaway."

A. "I call attention to the fact that in that settlement sheet the first mortgage is referred to as 'First mortgage assumed, $30,-000.00.' That was at the time, and I understood the parties were going to assume that mortgage in accordance with the contract. When Mr. Willingham arrived I exhibited to him the deed which had been prepared and the pencil copy of the settlement sheet. I wanted the parties to approve the settlement sheet before it was actually typewritten. It was then that Mr. Willingham stated he would not assume the mortgage on the property, and the trade would not be closed unless the deed was redrawn to make it subject to the mortgage. It was then he rather criticized me, and which is the incident that sticks in my mind, having drawn the deed in the first place, he stating it was a positive rule of his, with which I was familiar, because I had closed a number of business transactions with him, that he never assumed a mortgage, regardless of the amount, in any trade. I told him I knew it was his rule, but didn't think I should be criticized for drawing it according to the contract.

"I then went to see Mr. and Mrs. Phillips and asked them if they had any objection to the deed being re-drawn, under which it would make the mortgage subject to instead of them assuming it. They had no objection to it. Nobody thought it made any difference, that much cash being paid on the property—practically half cash.

"I then had Mrs. Thorton, who was Mr. Murrah's secretary, draw the deed which was actually executed and acknowledged, and upon which the title policy was issued, and a copy of which—I haven't checked this, but I take it it is a copy, made Exhibit '12' to Mr. Phillips' deposition. I think it is an exact copy of the deed that was recorded. Then I had Mrs. Thorton to change the settlement sheet and write a new settlement sheet, which was the one upon which the trade was closed. . . ."

It would thus appear that Phillips and wife were not present when Willingham made his objection to Gannaway. He states that after Mr. Willingham made the objection to him, that he went to see Mr. and Mrs. Phillips. This would clearly indicate that Mr. and Mrs. Phillips were not present when Mr. Willingham made the objection. In fact, we find that Mr. Willingham is contradicted

by his own witnesses, both as to Mr. Robinson being present, when his witnesses testify that Robinson was not present, and Robinson did not claim to be present, and he is also contradicted on the question of Phillips and wife being present and hearing the objection made.

Another circumstance challenges the attention of this court with respect to the testimony of both Gannaway and Willingham. Willingham testified that Gannaway was not representing him in closing this deal. He testified that he did not know who drew the papers. However, he admitted that Mr. Gannaway had handled many transactions for him. Mr. Gannaway testified that the Fidelity Bank & Trust Company paid him his fee. It is not explained by either Willingham or Gannaway what interest, if any, the bank had in this transaction, other than to guarantee the title to the property. Mr. Willingham was a high executive officer in the bank, and he evidently procured Mr. Gannaway to handle the closing of this transaction. It is admitted by all parties that at the time the transaction was closed neither Phillips nor his wife were represented by an attorney, and did not have an attorney present. At one place in the deposition of Mr. Willingham he rather intimated that he was of the impression that Gannaway was representing Phillips and wife, but later in his deposition admitted that he did not know who Gannaway was representing.

Mr. Phillips, one of the cross-complainants, testified that when he reached the conference room the settlement sheet was handed to him, and also the deed which he and his wife executed, by Mr. Gannaway. He stated that he examined the settlement sheet and saw that it provided for the $30,000.00 encumbrance, and saw that the consideration was according to the contract, $54,000, being the purchase price, and reciting the payment of $24,000 cash, less the $5,000 earnest money paid to Chew, and out of which Chew received his fee, or commission of $1,820 for handling the deal. He testified that he glanced at the deed and read a portion of it, that the deed being on a printed form with the blanks filled in with typewriting, that he did not read the entire deed and did not discover that it was not drawn according to the terms of the contract, which contract provided that the purchasers assume the payment of the mortgage debt; that he relied upon Mr. Gannaway to prepare the deed according to the contract and according to the settlement sheet which was handed him, and that he assumed that the deed was drawn pursuant to the provisions of the contract. He denied that he was present or ever heard Willingham make any objection to assuming the debt or any other objection. Before the deed was finally drafted there was some discussion as to the payment of the 1928 taxes and perhaps some other matters, but the denied emphatically that he ever knew that the deed as executed

by him and his wife was made subject to the mortgage debt and not assumed by the vendees, until he was called upon to pay the deficiency by the attorney of complainant after the trust deed on the property had been foreclosed; that knowing that the contract of sale provided that the mortgage debt was assumed by the purchasers, and that he was thereby released, he then went to the Register's Office to see just what the deed he and his wife had executed provided with reference to the mortgage debt, and there for the first time he discovered that the deed was made subject to the mortgage debt, and did not provide that the mortgage debt was assumed by the purchasers. Whereupon, he testified that he looked for the original contract which had been drawn either in triplicate or duplicate, and failed to find it among his files; that he had moved his office in the meantime and that his copy of the contract had been misplaced. He testified that he then went to see Mr. Chew. He found Mr. Chew's copy of the contract which he introduced into the record as an exhibit to his testimony.

Mr. Chew testified that after the suit was brought Mr. Robinson accompanied by his attorney, Mr. Donelson, came to his house to make some inquiries as to his recollection of the transaction. He stated in that conversation that Mr. Robinson told him that he would have paid this deficiency but that he wanted Willingham to bear half of it, and that he was willing to pay it if Willingham would pay his half of it.

Mr. Robinson's deposition was taken in the cause after the deposition of Chew was taken and he did not deny making this statement to Chew. In fact, he was not asked by either party any question with reference to the conversation on this subject testified to by Chew. Hence, the only conclusion is that Mr. Robinson did make the statement to Mr. Chew, who died after his deposition was taken and before the case was tried.

Adverting to the settlement sheets prepared by Gannaway, we think it well that both of these settlement sheets should be copied into this opinion. The first settlement sheet prepared by Gannaway is as follows:

"Geo. P. Phillips—McCallum & Robinson & E. G. Willingham
#1336

| | |
|---|---|
| earnest money pd. R. E. Chew, Jr. | $ 5000.00 |
| (Of this $1820.00 retained by him in full of com'n & balance $3180.00 paid direct to Mr. and Mrs. Phillips) | |
| balance cash payment | 19000.00 |
| 1st mtg. assumed | 30000.00 |
| | $54000.00 |
| Due by McCallum et al | $19000.00 |

above balance cash payment—
unearned fire & tornado ins.          177.00
(1 @ 5 M — 1 @ 7500 & 1@ 10000)

                                          $19177.00

Less following items due by Phillips
accrued int. 5 mos. 20 days on 30 M   $850.00
pro rata (5/12) of 1928 taxes on
basis of 1927, to be adjusted between
parties if amounts vary (City 675 S
&C 304.44)                        408.10

                                            1258.10

Balance—                               $17918.90
Plus following expenses:
T. G. Prem.                              147.50

                            54
Recording deed & tax      1.90            55.90

Total                                $18122.30
Amt due Phillips distributed as
     follows:
                    Abstracts                $    20.50
                    Notary fee to W/D            1.00
                    Geo. P. & Blanche E. Phillips   17897.40

                                            $17918.90''

The second settlement sheet does not differ very materially from the first, and is as follows:

                    ''Memphis, Tenn. May 28, 1928.
Settlement sheet of transfer of property and sale by Geo. P. Phillips to McCallum & Robinson, Inc., and E. G. Willingham.
Earnest money paid R. E. Chew               $ 5000.00
     (Of this $1820.00 retained by him in full of commission, and balance of $3180.00 paid direct to Mr. and Mrs. Phillips.)
Balance of cash payment                   $19000.00
First Mortgage                          $30000.00

Total purchase price.                     $54000.00
                    Due by McCallum et al
                    Above cash payment           $19000.00
                    Unearned fire & tornado insurance     177.00
                    (1 at $5000, 1-$7500, 1-$10,000)

                                          $19177.00

Less following items due by Phillips
Accrued interest 5 mos 20 days on
$30,000                                              $850.00
Pro rate (5/12) 1928 taxes on
basis 1927, to be adjusted between
parties if amounts vary (City $675,
S & C $306.66)                       $408.10   1258.10

| | | |
|---|---|---|
| Balance— | | $17918.90 |
| Plus following expenses: | | |
| T. G. premium | | 147.50 |
| Recording deed and tax | | 55.90 |
| | | $18122.30 |
| Amount due Phillips | | |
| distributed as: | | |
| Abstracts | $ | 20.50 |
| Notary fee on W/D | | 1.00 |
| Geo. P. & Blanche E. Phillips | | 17897.40 |
| | | $17918.90'' |

The first deed prepared by Gannaway was so drafted as to carry into effect the contract of sale and purchase between the parties, and the only material difference between the first and second settlement sheets is that in the first it is to be noted, that after setting out the $5,000 earnest money and the $19,000 balance cash payment, it is listed "1st mtg assumed, $30,000.00," while in the second settlement sheet it is recited "balance of cash payment, $19,000.00, first mortgage, $30,000.00." Even the second sheet was so drafted as to be misleading to Phillips, because it does not state "subject to first mortgage, $30,000.00" but merely states "first mortgage, $30,000.00."

It also appears that Willingham and McCallum & Robinson have paid one year's interest on said mortgage debt after they purchased the property, but made no further payments. A few months after they purchased the property Willingham proposed to the trustee of Mrs. Fuller, for himself and his associates to pay and satisfy the mortgage debt. The trustee declined to receive payment before the debt was due for reasons shown by the record. After the mortgage became due and demand had been made upon Phillips and wife and McCallum & Robinson, the trust deed was foreclosed on the property and at the trustee's sale McCallum & Robinson and Willingham became the purchasers at the price of $22,000.00, leaving a deficiency of $9,946.65.

Willingham, not having been a party to the contract of sale in which the payment of this debt was assumed by McCallum & Robinson, he was not made a defendant to the original bill filed by Ada Norfleet Fuller.

We think we have set out and fairly analyzed the facts. Upon these facts the Chancellor dismissed the complainant's bill as to the defendants McCallum & Robinson, and rendered a decree in favor of complainants against Phillips and wife for the deficiency and interest. The Chancellor also dismissed the cross-bill of Phillips and wife at the cost of cross-complainants.

From this decree the original complainant and the cross-complainants have appealed to this court from so much of the decree as dismissed the original bill and the cross-bill as to the defendants McCallum & Robinson. The appeal was not from the decree dismissing the cross-bill as to Willingham, because Willingham was not a party to the contract entered into between McCallum & Robinson and Phillips and wife for the sale and purchase of this property. So that on this appeal McCallum & Robinson are the sole appellees.

By the first assignment of error it is said:

"The Chancellor erred in holding and decreeing that the original contract of sale between the cross-complainants, George P. Phillips and wife, Blanche E. Phillips, and the defendant, McCallum & Robinson, Inc., had been rescinded and a new contract entered into between the parties, in the making of which the defendant E. G. Willingham represented the purchasers of said property and under which new contract the property was taken by the vendees subject to the then existing mortgage which was not assumed."

Under this assignment it is contended by appellants that there was no evidence that the original contract of sale between the cross-complainants, Phillips and wife, and the defendant, McCallum & Robinson, Inc., had been rescinded or that a new contract had been entered into between the parties; that there was no evidence that Willingham was the agent of, or represented the defendant, McCallum & Robinson, Inc.; that there was no evidence that a new contract was made between the parties by which the property was taken by the vendees subject to the then existing mortgage.

By the second assignment of error it is stated:

"The Chancellor erred in dismissing the bill of complainant, Ada Norfleet Fuller, as against the defendant, McCallum & Robinson, Inc."

It is insisted that this was error because the complainant, Ada Norfleet Fuller, was the beneficiary of the contract executed between the defendant, McCallum & Robinson, Inc., and the cross-complainants, George P. Phillips and wife, Blanche E. Phillips, by

the terms of which the defendant, McCallum & Robinson, Inc., agreed to pay, and assumed payment of the debt owed to complainant.

By the third assignment of error it is said:

"The Chancellor erred in dismissing the cross-bill of cross-complainants, George P. Phillips and wife, Blanche E. Phillips, against the defendant, McCallum & Robinson, Inc."

Under this assignment it is urged that this was error because the defendant, McCallum & Robinson, Inc., by a contract had bound itself to pay to complainant, Ada Norfleet Fuller, the mortgage indebtedness owed to her by the cross-complainants, George P. Phillips and wife, Blanche E. Phillips.

By other assignments of error it is contended that the Chancellor erred in failing and refusing to grant a decree to the complainant, Ada Norfleet Fuller, for the recovery of and from the defendant, McCallum & Robinson, Inc., of the sum of $9,946.65 with interest from the last day of May, 1936; that the Chancellor erred in failing and refusing to grant a decree to cross-complainants, George P. Phillips and wife, Blanche E. Phillips, for the recovery of and from the defendant, McCallum & Robinson, Inc., for the sum of $9,946.65 with interest from the first day of May, 1936; that the Chancellor erred in adjudging and decreeing that complainant pay one-half of the cost of the cause, and in adjudging and decreeing that the cross-complainants pay one-half of the cost of the cause.

We will not take up and consider the several assignments of error separately, since many of the assignments involve practically the same question of law and fact.

We think it well settled that an agreement by a purchaser of real property to assume the payment of an encumbrance debt on the property purchased becomes primarily liable to the mortgagee, owner of the debt, and that the vendor occupies the legal status of a surety. Fulmer v. Goldfarb, decided by the Supreme Court of Tennessee, February 27, 1937, and reported in 171 Tenn. 218, 101 S. W. (2d) 1108; Title Guaranty & Trust Co. v. Bushnell, 143 Tenn. 681, 228 S. W. 699, 12 A. L. R. 1512; Merrimon v. Parkey, 136 Tenn. 645, 191 S. W. 327; Leiberman, Loveman & O'Brien v. Bowden, 121 Tenn. 496, 119 S. W. 64; Wright v. Bank of Chattanooga, 166 Tenn. 4, 57 S. W. (2d) 800; Wilkings v. Jetton, 8 Tenn. App. 641; Jones on Mortgages (8 Ed.), Sec. 937 et seq.

In the annotations to the case of White v. Schader, 185 Cal. 606, 198 P. 19, reported and annotated in 21 A. L. R. 499, at page 505 under the head of Liability in General, the annotator states the rule to be:

"Where a grantee of mortgaged premises assumes or agrees to pay the mortgage thereon, it is generally held that the relationship

of principal and surety arises between them, the grantee becoming the principal debtor and his grantor the surety. The grantee by his contract assumes to relieve the grantor of all liability on account of the mortgage, so that the liability of the grantee to the grantor is that of a principal debtor to his surety.''

In support of the above statement cases are cited from numerous states, including California, Connecticut, Indiana, Iowa, Montana, Massachusetts, Missouri, Nebraska, New Jersey, New York, Ohio, Oklahoma, Vermont and Washington.

We think that the real question presented by the assignments of error is with respect to the holding and decree of the Chancellor to the effect that the contract entered into between Phillips and wife and McCallum & Robinson became merged ino the deed executed and delivered by Phillips and wife to McCallum & Robinson and Willingham; and the further question that the execution of the deed by Phillips and wife operated as a novation of the former contract; and the further question that Willingham was the agent of and represented McCallum & Robinson in closing the transaction; that the deed finally executed in the closing of the transaction constituted the sole contract between the parties; that, since the deed finally executed by Phillips and wife to the vendees was simply made subject to the encumbrance debt, and did not provide that the encumbrance debt was assumed by the vendees, that the vendees were not liable for the deficiency, and not liable either to complainant or to the cross-complainants for the amount of the deficiency resulting from the foreclosure of the mortgage.

We have already fully discussed the material facts as disclosed by the record, and the testimony of the several witnesses. In applying the facts and circumstances as disclosed by the record, and as above fully discussed, it remains to apply the law as to these several propositions to these facts.

The general rule is that where a conveyance is made subject to an encumbrance debt, and the payment of the encumbrance is not assumed by the vendee, that as a general rule, the vendee is not liable for the mortgage debt, or any deficiency that may result from the foreclosure of the mortgage, nothing else appearing.

However, there are exceptions to this general rule recognized by some jurisdictions. These exceptions proceed upon the theory that where the contract of sale previously entered into between the parties sets out the consideration for the conveyance to be paid by the vendees, and the encumbrance debt is included in the consideration to be paid, that even though the provision for the assumption of the debt is not specifically carried into the deed executed pursuant to the contract, but simply recites that there is an encumbrance and that the conveyance is made subject to the en-

cumbrance, that there is an implied agreement that the vendee has assumed the payment of the encumbrance debt. This also seems to be the holding in Snyder v. Summers, 1 Lea 534, 69 Minn. 534, 27 Am. Rep. 778. See, also, State Finance Co. v. Moore, 103 Wash. 298, 174 P. 22; Hawn v. Malone, 188 Iowa, 439, 176 N. W. 393; Kentucky Realty Co. v. Wade, 1936, 262 Ky. 148, 89 S. W. (2d) 640; Fiedlers Corp. v. Peak Realty Co., 1933, 114 N. J. Eq. 535, 169 A. 169; Max v. Beckelman, 1934, 115 N. J. Eq. 118, 169 A. 640; Hinckley Estate Co. v. Gurry, 1933, 53 Idaho.551, 26 P. (2d) 121; Johnson v. Davis, 146 Okl. 170, 293 P. 197; Smith v. Kibbe, 104 Kan. 159, 178 P. 427, 5 A. L. R. 483.

In Snyder v. Summers, supra, it is said:

"Independently of contract, whenever a mortgage debt forms a part of the consideration of purchase, equity has always implied a promise on the part of the vendee to indemnify the vendor against the personal obligation to pay the mortgage money; for having become owner of the estate, he must be supposed to intend such indemnity. Twedell v. Twedell, 2 Bro. C. C., 152; Waring v. Ward, 7 Ves., 337; Champion v. Brown, 6 Johns. Ch. [N. Y., 398], 409 [10 Am. Dec. 343]; Tichenor v. Dodd, 3 Green Ch. 454 [4 N. J. Eq. 454]."

Appellee relies upon the rule that where an executory contract has been entered into between the parties for the sale and purchase of real estate, and subsequently the property is conveyed by a deed to the purchaser named in the contract, that the contract of sale being merely an executory contract merges into the deed and the deed, therefore, becomes the final contract which governs and controls. This is the generally recognized rule. Page on Contracts, Sec. 2567; Watson-Loy Coal Co. v. Monroe Coal Mining Co., 85 W. Va. 645, 102 S. E. 485; Restatement of the Law of Contracts, Vol. 2, Sec. 416; Williston and Thompson on Contracts, Sec. 723; City of Bend v. Title & Trust Co., 134 Or. 119, 289 P. 1044, 84 A. L. R. 1001.

This, we understand to be the general rule, but it has its exceptions.

Where there has been a contract for the sale of real estate at a designated sum, and included in the total amount of the consideration recited in the contract of sale is a mortgage indebtedness against the property, and this mortgage debt is specifically assumed in the contract of sale, and the deed executed pursuant thereto, does not purport to set out the true consideration, but recites the consideration as a stated nominal sum and other valuable considerations, it is always permissible to prove the actual consideration to be paid by the vendee to the vendor.

In the case of Herrin v. Abbe, 55 Fla. 769, 46 So. 183, 18 L. R. A., (N. S.), 909, the court stated (page 185):

"The provision in the deed of conveyance that the property is conveyed subject to all liens and mortgages standing of record against it has no reference to the consideration for which the conveyance was made and evidence relating to the true consideration of the deed as actually agreed on does not contradict, add to, or vary the provision making the conveyance subject to incumbrances."

To the same effect is the holding in Wilson v. King, 23 N. J. Eq. 150.

In the Herrin Case it appears from the statement of the facts in the opinion as follows:

"The warranty deed conveying the premises from the mortgagor, James A. Herrin and wife to Allen Whitted states that the consideration therefore is 'the sum of one dollar and other valuable considerations:' and the deed, after the description of the land contains the following: 'The above property is conveyed subject to all liens and mortgages now standing of record against the same.' The answer of Whitted contains the following: 'This defendant denies that he assumed the said mortgage indebtedness in favor of the complainant, or that he ever at any time as part consideration of the conveyance of said premises to him, or for any other consideration, agreed or obligated to pay the said indebtedness or any part thereof. This defendant says that he took a conveyance of said property subject to the mortgage of the complainant, but that he never promised or agreed with said James A. Herrin, or any other person, to pay to the complainant or to any other person the said principal sum of money secured to her by the said mortgage, nor the interest thereon, nor any part thereof.' "

The court further stated in that cause:

"A parol agreement by the grantee, at the time of taking a deed of conveyance to real estate, that he will assume the mortgage indebtedness upon the property as a part of the consideration of the conveyance, may be enforced in equity by the mortgagee. Wilson v. King, 23 N. J. Eq. 150; Wright v. Briggs, 99 Ind. 563; Lamb v. Tucker, 42 Iowa 118; Jones on Mortgages, section 741 et seq."

The court further stated:

"The defendant James A. Herrin testified that a part of the consideration for the deed of conveyance from him to Whitted was the agreement of Whitted to pay the mortgages on the premises. A motion to strike this testimony on the grounds that it (1) was irrelevant; (2) was not in writing; (3) the deed contains the contract; (4) it contradicts, adds to, and varies the contract—was denied.

"The deed of conveyance recites a consideration of 'one dollar and other valuable considerations.' The statement in the deed as to the consideration is not complete, and the true consideration may be shown by parol. . . .

"The testimony relates to the consideration of the deed, and was clearly admissible on that ground, since the deed does not purport to be complete in stating the consideration."

Numerous authorities are cited by the writer of the opinion in that case to support his decision, including Wigmore on Evidence, Sec. 2433; 2 Devlin, Deeds, Sec. 822.

In the annotations to the case of City of Bend v. Title & Trust Co., supra, the general rule is stated as follows:

"As a general rule, the acts to be performed by the vendor under the terms of an executory contract for the sale of land relate to the production of documentary evidence to satisfy the vendee as to the validity of the vendor's title, and the execution and delivery of a deed conveying the character of title stipulated for. The acceptance of the deed completes the execution of the contract, and, subject to the exceptions hereinafter noted, the deed becomes the final and conclusive evidence of the contract under which it was executed. Hence, subject to those exceptions, all prior written and verbal agreements are extinguished by it. This is not due to any peculiar sanctity attaching to the deed itself, but because it is regarded as the final repository of the agreement which led to its execution.

"A very general exception to the foregoing rule relates to collateral stipulations incorporated in the contract but not in the deed. In this regard its is to be observed that a contract for a deed antedates the execution of the deed, and may, and often does, contain many provisions which the execution of the deed neither adds to nor takes away from. A deed is a mere transfer of the title, a delivery so to speak of the subject-matter of the contract. It is the act of but one of the parties, made pursuant to a previous contract either in parol or in writing. It is not to be supposed that the whole contract between the parties is incorporated in the deed made by the grantor in pursuance of, or as the consummation of, a contract for the sale of land. There are many things pertaining to the contract which it is manifest are never inserted in a deed. . . . The instrument of conveyance may be complete for its purpose, which is to declare and prove the fact of conveyance; yet very naturally and commonly it is but a part execution of a prior contract, and parol evidence is admissible to show the true consideration for which it was given and all other parts of the transaction, not inconsistent with the recitals in the deed, provided the fact of conveyance is not affected by it." Citing many cases in support.

■ There are also many authorities to support the proposition that where the deed recites the consideration of, say $1.00 or $10.00, and other valuable considerations, and where it appears that the true consideration was the payment of a stated sum in cash and the assumption of an encumbrance debt on the property, and the deed executed pursuant to the contract of sale does not show the full consideration, and where the deed in the covenants of warranty of title and against encumbrances, states that the property is unencumbered except by a mortgage debt; to which the deed is made subject that there is no such inconsistency in the contract for the sale as would preclude or defeat the right of the vendor to have the vendee satisfy the mortgage debt.

One of the leading cases on that subject to which our attention has been called is Linbrook Realty Corp. v. Rogers, 158 Va. 181, 163 S. E. 346, and the annotations thereto, reported in 84 A. L. R. 1035, wherein the court said on this subject (163 S. E. page 347):

"The reliance of the plaintiff is upon a contract of sale whereby the defendant assumed the pavement of the deed of trust debt. The main reliance of the defendant is that, when a deed has been executed and delivered as a performance of an executory contract for the conveyance of real estate, then the rights of the parties rest thereafter solely in the deed, although the deed may vary from the executory contract, and that the true consideration is that expressed in the deed."

The court in that case discussed and approved the holding in the case of Swain v. Virginia Bank & Trust Co., 151 Va. 655, 144 S. E. 645, wherein it was said (page 648):

"The vital question raised upon this appeal is whether the failure to insert in the deed from Irma G. Becker to Swain an express provision or covenant that the grantee should assume payment of the $12,000 lien relieves the grantee of liability for such payment, or on the other hand whether the assumption of the lien in the contract could nevertheless be shown by the mortgagee or lienholder and be relied upon by the latter as a valid ground of recovery. . . . It is argued on behalf of the appellants that the contract embracing the result of negotiations leading to the execution of the deed from Mrs. Becker to the Swains became merged in the deed, and, as the deed contained no assumption clause, the contract did not furnish a basis for a suit by the lienholder or mortgagee.

"The law is well settled to the contrary both in Virginia and other jurisdictions. It is a recognized rule that, independent of or in explanation of the recitals in a conveyance of real estate, the true consideration agreed upon may be shown, not only by a collateral writing stating the actual consideration, but by parol evidence as well."

In the same case it was further stated:

"In the instant case, the deed merely recited the purchase price as $10 and 'other considerations deemed valuable in law,' necessarily requiring explanation, and is plainly a reference to the covenants in the agreement."

The annotations to the Linbrook Realty Case, at page 1041 states as follows:

"The rule that the provisions in an executory contract for the sale of land are presumed to be merged in the subsequently executed deed is not of general application in determining the liability of the vendee as to obligations forming part of the consideration imposed upon him in the contract, although not incorporated in the deed, where the deed contains no inconsistent stipulation. Accordingly, it has been held that a stipulation in an executory contract for the sale of land, to the effect that the vendee assumes and agrees to pay certain encumbrances against the land, is not merged in a subsequent deed executed in purported performance of the contract, and which does not contain an assumption provision or any stipulation inconsistent therewith."

In the case of Magill Lumber Co. v. Lane-White Lumber Co., 90 Ark. 426, 119 S. W. 822, on this subject the court said (page 823):

"The principal contention in the case is that the bill of sale is complete and unambiguous, that it is the sole evidence of the contract between the parties, and that an additional parol agreement to pay the mortgage debt as a part of the consideration for the sale cannot be ingrafted upon the contract. It has been decided by this court in numerous cases that, though the recitals as to consideration in a deed cannot be contradicted by parol evidence for the purpose of defeating the conveyance, it is competent to prove by such evidence that the consideration has not been paid as recited, or to establish the fact that other considerations not recited in the deed were agreed to be paid, when it does not contradict the terms of the writing. . . . The proof in the case does not, as contended, contradict the terms of the bill of sale, which recites the consideration of the 'sum of one dollar and other considerations paid to me by J. H. Magill,' and that the property 'is subject to mortgage held by Lane-White Lumber Company.'

"It is true, as held by this court, that the acceptance of a deed subject to a specified mortgage does not imply a promise on the part of the grantee to pay the mortgage debt. Patton v. Adkins, 42 Ark. [197], 199. Neither does acceptance of a deed subject to a specified mortgage imply that there is no promise on the part of the grantee to pay the debt. Such a recital in a deed is not inconsistent with a promise to pay the debt. The two may stand together in complete harmony."

In the case of White v. Schader, 185 Cal. 606, 198 P. 19, 21 A. L. R. 499 it is said:

164

"Defendants' main contention on the appeal is that the written agreement for the exchange of the real properties of plaintiff and defendants, and the deeds which were exchanged in pursuance thereof, provided that each party should take the property transferred to it subject to the mortgage, thereon. That, as there was no agreement either in the deeds or in the written contract for exchange by which the defendants agreed to assume the mortgage upon the property transferred to them, oral evidence that such an agreement was entered into is inadmissible, for the reason that the writing between the parties must be considered conclusive as to the agreement between them.

"It is well settled by the authorities that an agreement to assume and pay a mortgage is not inconsistent with a deed reciting that the property is granted subject to a mortgage." . . .

The case of Herrin v. Abbe, supra, contained the following statement:

"The provision in the deed of conveyance that the property is conveyed subject to all liens and mortgages standing of record against it has no reference to the consideration for which the conveyance was made and evidence relating to the true consideration of the deed as actually agreed on does not contradict, add to, or vary the provision making the conveyance subject to incumbrances."

Under the facts and circumstances of the present case as hereinabove set forth in this opinion, we cannot escape the conclusion that, even though Willingham stated that he would not accept the deed containing a provision that he assumed the payment of the mortgage debt, the fact remains that Robinson was not present, and Willingham stated on cross-examination that he was not representing McCallum & Robinson in the transaction, but was representing himself only. As evidence that he was not representing McCallum & Robinson in making his objection to the form of the first deed, he testified that Robinson was present. If Robinson was present, he made no objection to the form of the first deed. It is also unmistakably shown by the record that Willingham had no knowledge of the provisions contained in the first deed until he was handed the deed by Gannaway at the time of, or just before the conference, and had no opportunity to discuss the form of the deed with McCallum & Robinson or any representative of McCallum & Robinson at the time he made the objection to the form of the deed and stated that he would not accept the deed containing a provision that he assume the mortgage debt. He admitted that the consideration for the purchase of the property was $54,000.

At the time Robinson proposed to sell to Willingham an interest in the property he told Willingham that the property could be bought for $54,000, $24,000 in cash and the balance, $30,000, the

encumbrance debt was not due until 1935, or to use his words "five or six years." So it is definitely shown that the true consideration which the vendees understood that they were to pay for the property was $54,000.

The facts show that they have not paid the amount of the agreed consideration of $54,000. Willingham tried to pay the $30,000 encumbrance debt and the trustee of the complainant declined to accept it at that time and for the reasons shown by the record. It is shown that real property in Memphis declined in value because of the depression. In that situation Willingham and McCallum & Robinson let the trust deed be foreclosed, and they became the purchasers at the foreclosure sale at the price of $22,000. This left a deficiency of approximately $9,000 and accrued interest, totaling $9,946.65. This resulted in the parties purchasing the property and getting the fee simple title thereto at the price of $46,000, when their contract was to purchase the property for the consideration of $54,000.

While it is true that Willingham, not having been a party to the contract of sale, and did not, therefore, assume the payment of the mortgage debt, and no appeal from the decree of the Chancellor dismissing the cross-bill as to him, the fact remains that if the decree of the Chancellor should be affirmed, it would result in the purchase of this property by Willingham and McCallum & Robinson, a one-half undivided interest each, at the price of $9,946.-65 less than the consideration recited in the contract and which all parties agree to be the true consideration. Willingham admits that he was informed that the purchase price of the property would aggregate $54,000.

We have already referred to the statement made by Mr. Robinson to Mr. Chew to the effect that he was willing to pay his part of this deficiency but wanted Willingham to help him. This statement by Robinson is the equivalent of an admission that he understood that he was liable for this deficiency, and that it was his interpretation of the true contract between the parties. Where the parties to a contract mutually agree as to the intention of the parties, the contract will almost invariably be construed as the parties themselves have construed it.

The further question is presented by appellants that in no event could the deed operate as a release of the vendees, McCallum & Robinson, because there was no consideration. It being further contended that the contract specifically provided that the $5,000 payment as earnest money should not prevent either party from demanding a specific performance of the contract; that, therefore, the cross-complainants could enforce specific performance of the contract against McCallum & Robinson, even though Willingham was unwilling to go forward with the deal. Hence, even though it

166

could be construed that cross-complainants yielded to the demand of Willingham for a change in the deed, it could only affect Willingham, and could not operate to release McCallum '& Robinson, because such an alleged agreement to the release would have been without consideration, and hence unenforceable.

In the view we have already expressed we deem it unnecessary to make this the point of decision, but, we will say that we are inclined to sustain this contention.

The conclusion we reach is that there was no merger of the contract for the sale of this property into the deed that would preclude the cross-complainants and the original complainant from obtaining the relief sought against McCallum & Robinson. Under the authorities above cited and referred to, and under the facts and circumstances as shown by the record in the case, the contract was not inconsistent with the terms of the deed. The fact that the contract provided that the vendees were to assume the payment of the mortgage debt as a part of the consideraion is not inconsistent with the provision in the covenant clause of the deed which recited that the property was sold subject to the mortgage debt.

We are therefore of the opinion that the learned Chancellor was in error in dismissing the original bill and the cross-bill as to the defendant McCallum & Robinson, Inc. We are of the opinion that the original complainant and the cross-complainants are entitled to recover of McCallum & Robinson the amount of the deficiency with interest thereon, and the decree will be entered here in conformity with this opinion.

The costs of the cause, including the cost of this appeal will be paid by appellee, McCallum & Robinson, Inc.

Anderson and Ketchum, JJ., concur.