JOYCE WILLIAMS SANDERS, R. C. Williams, James H. Williams, Rita Lynn Williams Morrison, Mildred L. Burskey, Jesse C. Williams, and Frederick Cortez Williams, Complainants-Appellees, v. JOSEPH E. LACKEY, Trustee, and Elysabeth E. Lackey, Defendants-Appellants.—439 S.W.2d 610.

Middle Section. October 25, 1968.

Certiorari Denied by Supreme Court April 7, 1969.

Jos. L. Lackey, Sr., and Joseph L. Lackey, Jr., Nashville, for appellants.

Neil Robertson, Ashland City, for appellees.

TODD, J. The complainants, the heirs of Malissie Pearl Williams, filed a bill in chancery against the defendants, Joseph L. Lackey, Trustee, and Elysabeth E. Lackey, asserting equitable ownership of an indebtedness

secured by an installment trust deed on certain property described therein, and praying for foreclosure and sale of the property to satisfy the debt. From a decree ordering foreclosure sale, defendants have appealed.

Defendant Joseph L. Lackey was the attorney for the deceased, Malissie Pearl Williams, and, after her death, he was attorney for her administratrix, Joyce Williams Sanders, one of the complainants herein, until a disagreement arose and other counsel was employed. Joseph L. Lackey also was named trustee in certain conveyances material to this lawsuit.

On September 25, 1958, the deceased executed two trust deeds to Lackey, Trustee, to secure the same indebtedness, namely a note of $6,577.00 due Mrs. Buena V. Olive. One of the trust deeds conveyed property in Davidson County and the other trust deed conveyed a farm in Cheatham County which is the subject of this litigation.

On August 9, 1960, the deceased sold and conveyed the Cheatham County farm to Alex F. Alipaz and wife under a combination warranty deed and deed of trust commonly known as an "installment deed". The consideration recited in the deed was the execution of a purchase money note of $2,645.00 plus interest and the assumption of and agreement to pay the mortgage indebtedness secured by the aforesaid deed of trust to Joseph L. Lackey, Trustee, that is, the $6,577.00 note due Mrs. Olive. Said deed further recites:

"and to secure said indebtedness, principal, interest, and attorneys fees, a lien is expressly retained on the land herein conveyed."

In the trust deed section of said combination deed the said Alipaz and wife conveyed the land to Joseph L. Lackey, Trustee,

"for the purpose of better and more effectually securing the said lien indebtedness."

and authorized foreclosure by advertisement and trustee's sale in the customary manner.

On October 17, 1960, defendant, Elysabeth E. Lackey, sold another 109 acre farm to the deceased. The consideration of the sale was the assumption of a mortgage indebtedness to Ashland City Bank and Trust Company and the transfer to Elysabeth Lackey of the $2,645.00 Alipaz note mentioned above.

On November 10, 1961, Alipaz and wife conveyed to Defendant Elysabeth E. Lackey the same farm they had purchased from deceased on August 9, 1960. The consideration named in this deed was five dollars cash and "other good and valuable considerations not herein mentioned". The same deed contained the following:

"and we do covenant with the said Elysabeth E. Lackey that we are lawfully seized and possessed of said land in fee simple; have a good right to convey it, and same is unencumbered, *except first mortgage indebtedness evidenced by note and deed of trust of record in Book 102, page 255 Register's office, Cheatham County, Tennessee, and entered in Note Book F. page 57, Register's office of said County.*" (Emphasis added)

The emphasized portion of the foregoing deed refers to the previously mentioned combination warranty-trust deed from deceased to Alipaz and wife and from Alipaz

and wife to Lackey, Trustee, to secure "said lien indebtedness".

After the death of the deceased, complainants, as heirs of deceased, sold the Davidson County property, and, in order to convey clear title, paid the entire amount of the debt due Mrs. Olive which had been secured by trust deeds on both the Davidson County and Cheatham County property. The defendant, Jos. L. Lackey, Trustee, then released the lien upon the Davidson County property and complainants came into possession of the Olive note, to which they claim equitable title and which they now seek to collect by foreclosure on the Cheatham County farm held by Mrs. Lackey.

From the foregoing, the Chancellor concluded:

"Under these various transactions Alipaz and wife had agreed to pay the Olive note, and Mrs. Lackey had agreed to pay same. Since the Complainants had to pay what was in fact the obligation of Mrs. Lackey they are entitled to be subrogated and to have a lien on the Cheatham County property. Mrs. Olive could have proceeded to enforce collection of her debt first against the Cheatham County property and had a sale realized a sufficient amount, Complainants as the heirs of Mrs. Williams, would have owned the Davidson County property free and unencumbered. When Complainants paid the note due Mrs. Olive it did not release either Mrs. Lackey or Alipaz and wife from the obligation of paying the deferred purchase money as set out in the installment deed. The deferred purchase money on the sale from Mrs. Williams to Alipaz and wife was that they pay the note to Mrs. Olive, and the consideration

of the deed from Alipaz and wife to Mrs. Lackey was that she pay this note."

\* &ast; &ast; &ast; &ast; &ast;

"Complainants are entitled to have a lien declared upon the real estate for the amount which they paid Mrs. Olive on the note due her, and to have the land sold under the terms of the installment deed.

"A decree will be prepared decreeing a sale of said real estate for the satisfaction of the indebtedness and a reference will be ordered to determine the exact amount that was paid by the Complainants on the Olive note."

Defendant's first assignment of error is that:

"the Court erred in holding that Elysabeth E. Lackey, assumed and agreed to pay the indebtedness owing Mrs. Olive on the note payable to her and secured by deed of trust on land in Davidson County, Tennessee, and also the land in Cheatham County, Tennessee, and the live stock thereon."

■ The mere taking over of property subject to a mortgage constitutes no promise to pay the mortgage indebtedness. Fuller v. McCallum and Robinson, 22 Tenn.App. 143, 118 S.W.2d 1028 (1937).

■ Where the grantee of encumbered property is sought to be held personally for the debt, it must be clearly shown that it was intended by the parties that the grantee was to assume the debt. Wilkins v. Jetton, 8 Tenn.App. 641 (1928).

There is no direct evidence in the record to the effect that the grantee, Mrs. Lackey, assumed or agreed to pay the encumbrance recited in the deed she received. Neither

the grantors, Mr. and Mrs. Alipaz, nor the grantee, Mrs. Lackey, testified. The deed is silent on this subject. It recites only the consideration of Five Dollars cash "and other unnamed considerations". Mr. Lackey testified as follows:

"Q   What was the consideration for that transfer?

A   I knew this mortgage was on the property which we reduced it to a certain amount; which was $7300.00 or $7400.00 and this $2645.00. I just don't know really what it was. She deeded that property and the consideration was $5.00. If the mortgage note hadn't been paid off, it would have been a mortgage against this property, but I owed that to Alipaz."

\*      \*      \*      \*      \*      \*

"Q   But getting back to my question, what was the consideration for this Alipaz transfer?

"A   Well, there is no consideration."

\*      \*      \*      \*      \*      \*

"Q   And you took that property over from Alipaz, but you say you are not supposed to pay it?

A   I didn't intend to assume it. The Court may hold I did, but \* \* \*

Q   If you didn't assume that note, Mr. Lackey, you didn't pay anything for this $13,000.00 farm, did you?

A   I traded my 109 acres which was really better land. I didn't pay Alipaz anything, but I turned my 109 acres over for that $2645.00 note.

Q   The first answer that you filed here in this Court, in this answer, you didn't say anything or set up

anything about Mrs. Williams owing you anything. You took the position in that answer that since they had paid this note, the lien on the Cheatham County property was no good. That was the substance of your answer, wasn't it?

A When I read the authorities, I concluded that I may owe Mr. Alipaz. I am dealing with Alipaz.''

\* \* \* \* \* \*

■ At the time of the deed from Alipaz to Mrs. Lackey, she was the owner of the unpaid Alipaz note for $2,645.00 secured by an installment deed lien on the subject farm, but junior to the original trust deed to secure the debt to Mrs. Olive. Effectively, Mrs. Lackey was the holder of a second mortgage for $2645.00, and ''took over'' the security subject to the prior lien to Mrs. Olive. In the absence of any specific agreement, these circumstances do not imply a promise on the part of Mrs. Lackey to pay the debt.

Furthermore, no personal judgment was awarded against Mrs. Lackey by the Chancellor's decree, which will not be affected by the disposition of the first assignment of error, which is sustained.

The second and third assignments of error are:

## II.

''The Chancellor erred in holding that the conveyance to Elysabeth E. Lackey was supported by a consideration, that is her alleged assumption and agreement to pay the Olive note.

## III.

''The evidence being that there was no consideration to support the conveyance from the Alipazes to Elysa-

beth E. Lackey, the Court erred in holding that there was a consideration to support said conveyance but should have held said conveyance void for lack of consideration and set aside said conveyance.''

The insistence that Mrs. Lackey did not personally assume the mortgage indebtedness has been heretofore upheld. The insistence that the deed to Mrs. Lackey was without consideration and void and should be set aside is unsupported by the evidence or any citation of authority. The testimony of Mr. Lackey quoted above does include the statement that there was no consideration for the conveyance, but this testimony must be viewed in the light of the circumstances and actions of the parties. Certainly it is a novel and untenable argument by the grantee of real estate that a lien which arose previous to the grant should not be enforced because the grantee obtained title without consideration. It is as simple as saying ''You may not enforce your mortgage against my property because my deed to the property is void''.

■ Even if the deed to Mrs. Lackey should be void, the pre-existing mortgage on the property would be valid and subsisting and subject to foreclosure. The issue presented by the second and third assignments is moot. The assignments are respectfully overruled.

The fourth assignment of error is as follows:

''The Court erred in holding that when complainants paid the note due Mrs. Olive it did not release either Mrs. Lackey or the Alipazes, but should have held that as a matter of law the debt secured by the note and deed of trust was paid and extinguished, and that the lien note held by the defendant, Elysabeth E. Lackey in the amount of $2645.00 and interest became the first

mortgage on the land, and whatever equitable interest the complainants may have in the land was subordinated to the first mortgage held by Elysabeth E. Lackey.''

Defendant cites a number of authorities in support of the general proposition that the payment of a debt discharges the lien securing the same, but none of these authorities involves the peculiar circumstances of this case wherein the debt was secured by two mortgages on separate properties, each of which mortgages contained an apt reference to the other.

■ We have heretofore held that Mrs. Lackey neither assumed nor incurred any personal liability by her acceptance of the deed from Alipaz. We must further recognize that Mrs. Lackey received from Alipaz and wife no more than they possessed, that is, the rights of Mrs. Lackey in the land can rise no higher than the rights of Alipaz and wife.

The rights of Alipaz and wife are determined by the combination warranty-trust deed by which they received title. In that instrument they assumed and agreed to pay the mortgage indebtedness due to Mrs. Olive, and executed a trust deed to create a record mortgage lien upon the land to enforce their agreement.

■ The rights of complainants, the heirs of Mrs. Williams, are the same as Mrs. Williams would have had if she had survived.

The issue therefore is: what are the relative rights and liabilities of a mortgagor and a vendee to whom a part of the mortgaged property has been conveyed? No authority has been cited or found where separate tracts were mortgaged by separate trust deeds to secure the

same debt. Many cases are found from other jurisdictions wherein separate tracts were encumbered by the same trust deed, or part of a mortgaged tract was sold, thereby dividing the mortgaged tract. We see no distinction to be made between these various situations, so long as the various tracts are encumbered by liens created by the same or simultaneous instruments securing the same debt.

In cases wherein the mortgagor conveyed part of the mortgaged property to a third party for full consideration and without any mention of or assumption of the mortgage by the vendee, it is assumed that the parties intended that the vendee was to have his part of the tract free and unencumbered; and, to this end, the mortgagor-vendor is held bound to pay the mortgage debt or have it satisfied first out of his own part of the tract.

In cases where the mortgagor sells part of the mortgaged property "subject to" the pre-existing mortgage without an agreement about payment of the mortgage, it is generally held that the mortgage lien remains an equal charge against all the mortgaged tract and that either mortgagor-vendor or his vendee may enforce pro-rata application of the separate tracts to the satisfaction of the mortgage.

Where, as in the present case, the mortgagor sells a part of the mortgaged property to a third party who assumes and agrees to pay the entire mortgage indebtedness, the rule is otherwise. The rights of the mortgagee are unaffected by the transaction, but, as between the mortgagor and his vendee, the vendee assumes the position of principal obligor and his part of the property becomes the primary security for the debt. In relation to his vendee, the mortgagor retires to the position and

privilege of surety and his portion of the tract is only secondarily subject to the mortgage and is entitled to exoneration at the hands of the vendee.

In Glenn on Mortgages, Vol. II, Sec. 294.1, pp. 1241, 1242, is found the following:

"The case so far discussed, let it be repeated once more, is based upon the fact that each purchaser paid for his lot in full. But if one of them has not so paid, but instead has assumed the mortgage, or taken subject to it (which means that he deducted the face of the mortgage from the purchase price), then the court cannot apply the rule of sale in inverse order of alienation, because it would not be fair in view of this party's obligation. For he has agreed to take care of the mortgage, to the extent of paying the debt it secures (in the case of assumption) or to the extent of the land (as where he takes subject to mortgage), and has reserved from his purchase price accordingly. Hence he should perform his obligation; the mortgagor can force him to do so, * * *"

In 59 C.J.S. Mortgages sec. 433, p. 658 is found the following:

"*Effect of assumption of mortgage by grantee.* The rule rendering the land retained first liable for the mortgage does not apply where the grantee assumes the payment of the mortgage debt. It has been held that by his assumption of the entire mortgage the grantee becomes the principal obligor on the mortgage debt and the original mortgagor becomes his surety thereon, * * *."

Cases are cited from Massachusetts, New York and Texas in support of the foregoing.

In 35 Am.Jur., Marshaling Assets and Securities, Sec. 43, p. 414 is found the following:

"Accordingly, it is settled by the unanimous consensus of the courts that the doctrine, both in its phase relating to a retained parcel and that relating to the parcel last alienated or encumbered, is inapplicable where the parcel which would otherwise be protected from the obligation of paying or contributing to the payment of the paramount encumbrance is conveyed subject to that encumbrance, or under a conveyance in which the grantee assumes its payment, and the amount, or the proportionate amount, of the paramount encumbrance is credited on or deducted from the consideration for the conveyance of the parcel. In such a case the underlying reason for the rule is lacking, and therefore the rule is inapplicable.

"Under this rule, if the grantee has assumed or bound himself to pay the debt which is secured by the lien, the parcel which has thus been purchased becomes primarily chargeable with the debt as against the grantor * * *""

In 21 A.L.R. at page 530 is found the following:

"Where the grantee of a portion of mortgaged premises assumes and agrees to pay the mortgage on the entire premises, it has been held that the portion conveyed to the grantee becomes a primary security, while the portion retained by the grantor is a secondary security. It is the duty of the grantee to protect from loss through the mortgage, the grantor, whose land, thus standing as surety for him, he has contracted to protect, and for the violation of this duty the grantor is entitled to recover to the extent of the damage suf-

fered through loss of the property not conveyed. Fleming v. Reed (1898) 20 Ind.App. 462, 49 N.E. 1087.

"Similarly, in Russell v. Pistor (1852) 7 N.Y. 171, 57 Am.Dec. 509, it was held that a conveyance of a portion of mortgaged premises on condition that the grantee should assume and pay the mortgage rendered the portion conveyed primarily liable for the entire mortgage debt, and if the grantor was compelled to pay it he could recover it from the grantee.

"So, in Jager v. Vollinger (1899) 174 Mass. 521, 55 N.E. 458, wherein it appeared that the owner of two parcels of land covered by the same mortgage conveyed one parcel to a grantee, who assumed the mortgage, and subsequently conveyed the second parcel to a third person without any mention of the mortgage, it was held that the effect of the agreement of assumption by the first grantor was to throw the burden of the mortgage on the parcel conveyed to him, and it was his duty to exonerate from the mortgage lien the parcel of land conveyed to the second grantee."

\*   \*   \*   \*   \*   \*

In the case of Markarian v. Morazines, 83 N.H. 479, 144 A. 265 (1929), Markarian mortgaged two tracts of land to secure the same debt. He then conveyed one of the tracts to Morazines who assumed and agreed to pay the entire mortgage on both tracts. Later, Markarian undertook to sell his remaining tract and was obliged to pay $1000.00 on the mortgage to clear title to the tract being sold. Meanwhile, Morazines conveyed his tract to a third party. Markarian brought suit to secure reimbursement of the $1000.00 paid by him on the mortgage, and to impress a lien upon the Morazine tract for the same. The court sustained Markarian in spite of the

fact that he had paid off only part of the mortgage, and said:

"[1, 2] It is generally held that the relation between a mortgagor and his grantee, when the latter has assumed the payment of the mortgage, is that of surety and principal, and, if the mortgagor is later obliged to pay the mortgage debt, he will be subrogated to the rights of the mortgagee. Hoysradt v. Holland, 50 N.H. 433; Jones, Mortgages (8th Ed.) Section 1765, and cases cited. The rule is not otherwise, even though the mortgagor has conveyed only a part of the mortgaged premises, provided the grantee has assumed the entire debt. Russell v. Pistor, 7 N.Y. 171, 57 Am.Dec. 509 * * *

\*   \*   \*   \*   \*   \*

"[5] Nor is there any significance in the point which the defendants emphasize that the plaintiff was not in a literal sense compelled to make the payment in question. Wiltsie, in his treatise on Mortgage Foreclosure (4th Ed.) Section 419, states that, 'where a grantor is obligated to pay a mortgage debt and conveys the land to a grantee, who assumes the payment thereof, he is entitled, on paying the debt, voluntarily or otherwise, to be subrogated to the rights of the mortgagee.''

\*   \*   \*   \*   \*   \*

In McRae v. Pope, 311 Mass. 500, 42 N.E.2d 261, 143 A.L.R. 540 (1942) McRae conveyed a parcel of land to Pope who assumed and agreed to pay a debt secured by a mortgage on the parcel conveyed and another parcel. When McRae sued to compel payment of the entire mortgage by Pope, the court sustained McRae and said:

"The case therefore, in so far as Pope stands, is that he assumed and agreed to pay the mortgage, with the result that, as between him and the plaintiffs he became the principal debtor, and the plaintiffs became sureties. The plaintiffs were not only entitled to have the land freed from the lien of the mortgage, but they could also enforce Pope's promise to pay the mortgage note and discharge them from any liability upon indebtedness. Lynn Five Cents Savings Bank v. Portnoy, 306 Mass. 436, 438, 28 N.E.2d 418, and cases cited. As between Pope and the plaintiffs the burden of the mortgage was thrown on the parcel conveyed to him to the exoneration of the land that was retained by the plaintiffs. Costa v. Sardinha, 265 Mass., 319, 321, 163 N.E. 887, and cases cited. * * * In the case at bar, the plaintiffs have already paid the mortgage debt, and here seek to recover the amount so paid. They are entitled to recover. Lappen v. Gill, 129 Mass. 349, 350. The measure of damages is the amount of the mortgage debt that Pope should have paid. Furnas v. Durgin, 119 Mass. 500, 506, 507, 20 Am.Rep. 341.''

*    *    *    *    *    *

When the deceased sold the Cheatham County farm to Alipaz and wife, they assumed and agreed to pay the mortgage to Mrs. Olive in its entirety, and they further executed a trust deed to Lackey, Trustee, to place upon the Cheatham County farm a lien to assure their payment as promised. Thus they unequivocally burdened the Cheatham County farm with the primary obligation of payment of Mrs. Olive's note to the exoneration of the other property in Davidson County. The Cheatham County farm remains to this day burdened with the lien or mortgage thus imposed, independently

of and irrespective of any technical release or discharge of the original mortgage given to Mrs. Olive. The conveyance of the farm to Mrs. Lackey did not release this burden upon the farm, nor did the death of Mrs. Williams or the payment of the debt to Mrs. Olive discharge the right of the Davidson County property to be relieved of the Olive mortgage through payment by Alipaz or sale of the Cheatham County farm.

The owners of the Davidson County property, whoever they might have been, were entitled to have the mortgage on the Davidson County property cleared by performance of the Alipaz promise, of enforcement of the trust deed given to secure the promise. The promise was not kept and the trust deed should be enforced.

Defendants insist that the trust deed executed by Alipaz and wife was also to secure the $2645.00 purchase money note to Mrs. Williams, now owned by Mrs. Lackey, and that Mrs. Lackey is entitled to assert same as a first mortgage in her favor. The acceptance of the deed from Alipaz and wife to Mrs. Lackey effectively merged her rights as mortgagee with her rights as owner of the interest of Alipaz and wife, and thereby extinguished the mortgage claim of $2645.00. See 59 C.J.S. Mortgages, Section 437. This insistence of defendants cannot be sustained for the further reason that the mortgage lien of the Olive note predated the purchase money note held by Mrs. Lackey and the lien to assure its payment must naturally be prior and superior.

Defendant's fourth assignment of error is respectfully overruled.

Defendant's fifth assignment of error is as follows:

"None of the relief prayed for in the original bill was granted, and the relief granted was so foreign and inconsistent to the prayer of the original bill that the defendants were surprised and were not given an opportunity to show that Mrs. Williams had fraudulently disposed of valuable security which was under mortgage to pay the lien indebtedness, which consisted of live stock of the value of at least $2,000.00, valuable timber on the land, seven (7) acres taken under condemnation proceedings by the U. S. Government in the development of the Cheatham Dam Project, and the careless and negligent burning of the dwelling house on the land, by the tenants of Mrs. Williams, which has reduced the value of the property to the extent that a deficiency will result to the irreparable loss to the defendant Elysabeth E. Lackey who in good faith accepted the $2645.00 lien note in exchange for 109 acres of land, which the complainants now own and unless this note is held to be a first mortgage on the land involved, such deficiency will deprive Elysabeth E. Lackey of her land without consideration."

No inconsistency is found between the relief prayed for and that which was decreed. The bill prayed for process, and:

2. "That said installment deed be enforced, and the land there conveyed be sold to satisfy complainants' said debts, and the interest and attorneys fee thereon, and the costs of this suit, and that said sale be in bar of the equity of redemption.

3. For general relief."

The decree appealed from provides:

" * * * the Court finds that complainants have a lien on the property described in the original bill and that said property should be sold for the satisfaction of the indebtedness owing to complainants.

"The Court finds that the complainants are entitled to recover the amount they paid on said note in the amount of $7,858.30, plus six per cent interest from November 16, 1965, (that being the date and amount paid by complainants to Mrs. Beuna V. Olive) plus attorneys fee in the amount of $700.00 and the Clerk and Master is authorized to advertise and sell said property under and by virtue of the installment deed as set forth in said Memorandum of Opinion."

Defendants' further plea that they be given opportunity to present further evidence comes too late in this Court. Plea of surprise or newly discovered evidence is properly addressed to the discretion of the trial judge by motion for continuance or new trial or petition to rehear, and not for the first time as an assignment of error on appeal. Court of Appeals Rule 11(4).

Defendants' fifth assignment of error is respectfully overruled.

Defendants' remaining assignments of error reiterate the contentions which have heretofore been considered, discussed, and rejected. Said remaining assignments are respectfully overruled.

Except for the statement in the Chancellor's opinion, which was not implemented by the decree, that Mrs. Lackey assumed a personal liability to complainants, we are in complete accord with the conclusions of the Chancellor. The transactions described in this record are difficult to evaluate, especially as to details. The death

of one and absence of two of the participants has been a further handicap in the full determination of the facts. The conclusion reached by the Chancellor is fair, equitable, and correct.

The decree of the Chancellor is affirmed. The costs of this appeal are taxed against the defendants-appellants. The cause is remanded for further proceedings.

Affirmed and remanded.

Shriver, P. J. (M.S.), and Puryear, J., concur.