William H. ELLISON and wife, Marjorie P. Ellison, Plaintiffs-Appellees,

v.

F. MURRAY PARKER BUILDERS, INC., Defendant-Appellant.

Court of Appeals of Tennessee, Middle Section.

Feb. 24, 1978.

Certiorari Denied by Supreme Court May 22, 1978.

Robert J. Warner, Jr., Dearborn & Ewing, Nashville, for plaintiffs-appellees.

Gail P. Pigg, Nashville, for defendant-appellant.

## OPINION

SHRIVER, Presiding Judge.

### The Case

Plaintiffs filed a complaint in the Chancery Court of Davidson County against the defendant on October 3, 1974 to recover for a breach of covenant against encumbrances as set forth in the deed to property purchased by the plaintiffs from the defendant. The Chancellor found that the defendant had breached its duty to disclose to the plaintiffs that the house had been built over a sewer line and easement and had breached the covenant against encumbrances as

set forth in the deed and he awarded plaintiffs a judgment for $3,000.00 against the defendant.

On appeal, the Western Section of this Court, sitting by interchange, in an Opinion by Presiding Judge C. S. Carney, found that the plaintiffs had been damaged but remanded the case to the Chancery Court for the sole purpose of determining the diminution in value of plaintiffs' property as of the date of their purchase resulting from the sewer and easement underneath the house. On remand, the Chancellor found that the diminution in value was $6,700.00 and from a judgment for that amount, defendant has perfected its appeal to this Court and has assigned errors.

### In Re The Opinion of the Court of Appeals, Western Section, sitting at Nashville

In order to determine the exact issue before the Chancery Court on remand, it is important to examine the Opinion of the Court of Appeals which ordered the remand.

In the Opinion of the Court, which is made a part of the record herein, it is stated:

"The Chancellor awarded the plaintiffs, Mr. and Mrs. Ellison, a judgment of $3,000.00 as damages resulting from the failure of the defendant builder, F. Murray Parker Builders, Inc., to disclose to the plaintiffs that a house which they were purchasing encroached on a utility easement and covered a 12-inch trunk sewer line which traversed the lot from north to south. The Chancellor found that the sewer line and easement were encumbrances upon the land and that the omission of any reference in the plaintiffs' deed to such encumbrance constituted a breach of covenant against the encumbrances in the deed. The defendant has appealed and assigned errors."

The Opinion proceeds to state that the plaintiffs-appellees had contracted to buy the house then under construction, which contract was executed in September, 1972, for a price of $46,500.00; subsequently, the plaintiffs-appellees contracted to sell the house and lot for a price of $59,500.00 and at the same time contracted to buy another house in Williamson County; that on having a survey made in connection with the sale of this property, the plaintiffs learned for the first time that the house was encroaching upon a sewer easement and a trunk line sewer was situated under the house; that Mr. F. Murray Parker, President of defendant Company, when told of this situation, expressed surprise; that when the purchasers from the plaintiffs learned of the situation, they refused to complete the purchase but, subsequently, did do so after the price was reduced from $59,500.00 to $56,500.00.

After discussing other elements of the case, the Court stated:

"The great preponderance of the evidence in this case is that the house does lie over the sewer line."

The Court then stated that the encroachment of the house on this area of the utility easement constituted a breach of covenants of seizin and against encumbrances in defendant's deed to the plaintiffs.

After discussing the assignments and authorities relied on by the defendant, the Court stated:

". . . The general rule applicable to the case at bar is concisely stated at 20 Am.Jur.2d p. 703, Sec. 145. . . ."

The Opinion then quotes substantially from 20 Am.Jur.2nd, p. 703, part of which quotation is as follows:

"Thus, in an action on a covenant against encumbrances, where the encumbrance is a servitude or easement which cannot be removed at the option of either the grantor or grantee, damages will be awarded for the injury proximately caused by the existence and continuance of the encumbrance, the measure of which is deemed to be the difference between the value of the land as it would be without the easement and its value as it is with the easement. . . ."

The Opinion then continues:

"The only proof of diminution in value as a result of the existence of the trunk line sewer was the difference in purchase price paid by the Remicks after learning of the sewer, namely $3,000. At this time Mr. and Mrs. Ellison were under some business compulsion because they had already contracted for another house in Williamson County, Tennessee. It is very candidly stated in the plaintiffs' brief in this Court that they settled quickly because they did not want to be caught with two houses on their hands. *The determinative date of damage is the date of plaintiffs' purchase, January 16, 1973, and not the date of sale by plaintiffs to the Remicks in August 1974.* [Emphasis supplied]

Assignment of Error No. III is sustained. The cause will be remanded to the Chancery Court of Davidson County to determine the diminution in value of the plaintiffs' lot as a result of the existence of the trunk line sewer under the house as of the date of the purchase, namely, January 16, 1973. The costs of this appeal will be taxed to the plaintiffs-appellees. T.C.A. Section 20–1621. The costs in the lower Court on the first and second trials will be taxed to the defendant-appellant. Judgment reversing and remanding will be entered accordingly.

/s/ Carney, P. J.
/s/ Matherne, J.
/s/ Nearn, J."

*It is thus seen that the only issue before the Chancery Court on remand was to determine the diminution in value of the plaintiffs' lot as a result of the existence of the trunk line sewer under the house as of the date of the purchase, namely, January 16, 1973.*

### Chancellor's Memorandum Opinion

After hearing the cause on remand, the Chancellor filed the following Memorandum Opinion:

### "MEMORANDUM

This matter was heard on remand from the Court of Appeals for determination of damages resulting from a house constructed over a trunk sewer line.

The measure of damages is the diminution in value as a result of the existence of the sewer as of January 16, 1973, the date of plaintiffs' purchase.

Four witnesses testified at the hearing.

A qualified real estate appraiser testified that he made an appraisal of the property as of January 1973, and it was his professional opinion that the property had a depreciated value because of the sewer of $6,700.00.

The appraiser also testified, on cross-examination, that two mortgage companies had refused loans because of the sewer defect and that the loan that was approved was at a reduced price as a result of the defect on the property.

A qualified sewer contractor testified that the minimum cost of relocating the sewer from under the house was $7,040.00 as of October 1976. An associate of the sewer contractor testified that the price should be reduced [to] $6,700.00 as the January 1973 cost.

A qualified engineer testified that his estimated cost of relocating the sewer four to five years ago was $2,488.00.

From all of the evidence, the Court finds that the diminution in value of plaintiffs' lot as a result of the existence of the trunkline sewer under the house as of the date of the purchase, January 16, 1973, was in the amount of $6,700.00.

A decree should be drawn accordingly.

/s/ C. Allen High, Chancellor
April 13, 1977."

The foregoing Opinion was implemented by a decree rendering judgment in favor of plaintiffs for $6,700.00.

### Assignments of Error

There are six assignments of error which may be summarized as follows:

Assignment No. 1 charges error in permitting the appraiser who testified for the plaintiff to testify as to the value of the property in late 1972 and early 1973, when his testimony reveals that he first inspected

the property in the late Winter or early Spring of 1977.

Assignment No. 2 charges error in permitting the appraiser to testify as to depreciation in value based on a "cost to cure" method.

Assignment No. 3 is a reiteration of Assignment No. 2 and complains that the expert relied solely on matters outside of his knowledge and on the opinions of others.

Assignment No. 4 complains of permitting a sewer contractor to testify as to the cost for rock excavation on the ground that his testimony revealed that he was guessing as to the amount of rock to be removed.

Assignment No. 5 asserts that the judgment is contrary to the weight and sufficiency of the evidence.

Assignment No. 6 asserts error in awarding more than nominal damages to the plaintiffs.

### Our Conclusions

Mr. William R. Manier, III, was called as a witness on behalf of the plaintiffs and testified as to his qualifications as a real estate appraiser, having been in that profession for twelve to fifteen years full time and having taken a number of courses and seminars sponsored by the Society of Real Estate Appraisers and the American Institute of Real Estate Appraisers, and he stated that he carries the designation of SRA, meaning Senior Residential Appraiser.

Mr. Manier testified that he appraised the property in question, stating that he had examined the property in early Spring or late Winter of 1977 and had examined it as if it had no known detrimental aspects to it; that he inspected the property, inquired of local residents and made observations of it as to whether there were any significant changes in the property which had not been called to his attention, and proceeded on the assumption that the house was new as of the time it was purchased in 1972 or early 1973. He also stated that the techniques he used were those normally used by a practicing appraiser, one of which was a cost approach related to cost prevalent at the time

applicable, that is, 1972 and 1973, a utilization of sales during the same time span of houses as nearly similar as possible, both as to age, type, etc. He stated:

"From this data, an analysis, an opinion of value was derived which indicated strong support and a final conclusion that the actual sales price did, in fact, represent the market value as of this time, with no detrimental aspects being taken into consideration."

He was then asked and answered:

"Q. And what is your opinion as to what the value of the house and lot were back in September of 1972 and at the time of the sale in January of 1973?

A. $46,500.00."

He was then asked if he formed an opinion as to the value of the property at the time in question with the sewer and sewer easement, that is, with the actual sewer itself situated beneath the house, and he answered that he had formed such an opinion and that, in his opinion, the value with the existing sewer easement under it was $39,800.00 which amounted to a diminution in value of $6,700.00 as a result of the sewer under the house.

As was pointed out by the Chancellor in his Memorandum Opinion, in addition to the testimony of Mr. Manier, a qualified sewer contractor testified that the minimum cost of relocating the sewer from under the house was $7,040.00 as of October 1976.

The Chancellor was satisfied that Mr. Manier qualified as an expert and that his testimony was competent and relevant and that the objection set forth in Assignment No. 1 that he had viewed and inspected the property in 1977 and then gave his opinion with respect to the value in 1973 was not a valid objection. We are impressed that Mr. Manier was qualified to express his opinion and that the weight to be given that opinion depended, in a large measure, on the Chancellor's view of the testimony and evidence, he having seen and heard the witnesses and relied on the credibility of Mr. Manier in making his decision.

■ It is to be noted that the real estate appraiser, Mr. Manier, was shown to have had knowledge of the area at the time period involved and that he was not asked to simply deduct the "cost to cure" from the sales price to arrive at his conclusion and, thus, the mere fact that he considered the "cost to cure" as an element in making his appraisal did not render his testimony inadmissible, nor did it destroy the effect of his opinion.

■ As is stated in Nichols, *Law of Eminent Domain*, Sec. 14.247, the general rule is that as is the case in other elements of damage, the actual or estimated cost of specific items of construction or reconstruction are not recoverable as such, but may be utilized as elements bearing upon the market value of the property in question.

Counsel for the plaintiffs cite several cases from other jurisdictions bearing upon this question, among which is *Steiger v. City of San Diego*, 163 Cal.App.2d 110, 329 P.2d 94 (1958), where the landowners sought to recover damages resulting from the construction of a drainage system which caused water to erode their property. In that case it was said:

"The measure of damages is not the cost of installation of a pipe to carry the water through plaintiffs' land; however it properly may be considered by the trial court for evidence of the decrease in market value."

To like effect is *State v. Bruening*, 326 S.W.2d 305 (Mo.1959), and *Currie v. Glasscock*, 212 S.W. 533 (Tex.Civ.App.).

Most authorities seem to hold that the "cost to cure," while not an element of damages in itself, nevertheless, may be considered as relevant to whether there was any diminution in value to the property because of the taking or because of the encumbrance.

■ Counsel for appellant argues that because the plaintiffs were able to sell their property at a profit some time after the purchase, they should not be entitled to recover more than nominal damages since the burden is on them to show that the existence of the easement has inflicted upon them an actual loss.

This question was before the Court of Appeals on the prior appeal and this position was definitely rejected by the Court which, as is seen from the quotation from the Opinion of the Court hereinabove, it was said:

"The determinative date of damage is the date of plaintiffs' purchase, January 16, 1973, and not the date of sale by plaintiffs to the Remicks in August 1974."

In Thompson on Real Property, Section 3158, (1962), the general rule is stated to be:

"The measure of damages is not affected by a rise in the value of the land involved." Citing *North v. Brittain*, 154 Tenn. 661, 291 S.W. 1071.

It is to be noted that there is no evidence in this record which disputes or is contrary to the opinion evidence offered by Mr. Manier.

For the reasons hereinabove stated, the assignments of error are overruled and the judgment of the Chancellor is affirmed.

AFFIRMED.

TODD and DROWOTA, JJ., concur.