# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
August 9, 2004 Session

## RANDEL P. CARLTON, ET AL. v. MARK L. WILLIAMS, ET AL.

**Appeal from the Circuit Court for Bradley County**
**No. V-00-112     Lawrence H. Puckett, Judge**

_____

**No. E2003-02996-COA-R3-CV - FILED NOVEMBER 19, 2004**

_____

Randel P. Carlton, and Julie S. Carlton ("Plaintiffs") purchased a house from Mark L. Williams and Sandra Kay Williams ("Defendants"). Plaintiffs later sued Defendants[1] claiming, among other things, that Defendants knew and failed to disclose that the swimming pool was not in good working order and that the swimming pool encroached onto a sewer easement and neighboring property. Plaintiffs also claimed that Defendants had warranted that all fixtures, including the swimming pool, were free of liens and encumbrances and had breached this warranty. The case was tried on the issue of whether Defendants had warranted that all fixtures, including the pool, were free of liens and encumbrances. The Trial Court found and held, *inter alia*, that the paragraph of the sales contract relied upon by Plaintiffs contained no warranty and that the owner's affidavit also contained no warranty because it merged into the deed at closing. The Trial Court dismissed the case against Defendants. Plaintiffs appeal. We affirm, in part, reverse, in part, and remand for further proceedings.

## Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
## Affirmed, in part, Reversed, in part; Case Remanded

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J. and CHARLES D. SUSANO, JR., J., joined.

William J. Brown, Cleveland, Tennessee, for the Appellants, Randel P. Carlton and Julie S. Carlton.

Barrett T. Painter, Cleveland, Tennessee, for the Appellees, Mark L. Williams and Sandra Kay Williams.

---

[1]Plaintiffs also sued Boyd Williams d/b/a Coldwell Banker Hamilton & Williams Realty; Wayne Thomas and Wendy Thomas, individually and as employees of Charles M. Hardy d/b/a Ransom Realty. Plaintiff nonsuited all claims as to these defendants prior to trial as well as all other claims against Defendants.

# OPINION

## Background

Plaintiffs purchased a house located at 2455 Tam-O-Shanter Drive in Cleveland, Tennessee ("the Property") from Defendants in April of 1999. The Property is encumbered by a sewer easement that is ten feet wide, five feet on either side of the lot lines.

In February of 2000, Plaintiffs sued Defendants claiming, among other things, that Defendants knew the in-ground swimming pool located on the Property was not in good working order and that Defendants had misrepresented that it was. Plaintiffs also claimed that the swimming pool encroached on a sewer easement and on neighboring property and that Defendants knew this but did not disclose these facts. Plaintiffs further alleged that Defendants had warranted that all fixtures, including the pool, were free of all liens or encumbrances and that this warranty was breached.

Plaintiff Randel Carlton testified that having a house with a swimming pool was important to him because his wife is a stay-at-home mom and the pool would be at-home entertainment for their two children. He testified that when they were searching for a house to purchase, he and his wife looked at a house across the street listed for approximately the same price as the Property, but that house did not have a pool.

Plaintiffs were shown the Property by realtors, Wayne and Wendy Thomas. Plaintiffs made an offer to purchase and after some negotiations, Plaintiffs and Defendants reached a deal and entered into an agreement in March of 1999. Plaintiffs rely on paragraph 12D of the Sales Contract which reads as follows: "All fixtures and equipment attached to or appurtenant to the Property, to the extent included in the sale, are represented to be owned by Sellers free from all liens and encumbrances except as stated herein." Plaintiffs received a disclosure statement from Defendants that stated Defendants were not aware of any encroachments or easements. Plaintiff Randel Carlton testified that as a result of seeing the disclosure statement, he was not concerned about obtaining a survey of the Property.

Plaintiffs did have a home inspection done, but this inspection specifically excluded the swimming pool. Mr. Carlton testified that the home inspector explained to him that the pool was not included in the inspection and that an independent inspection was recommended. Mr. Carlton testified that rather than obtain a separate inspection of the pool, he and Wayne Thomas decided they would inspect the pool. Mr. Carlton stated he had a pool at a previous house and was familiar with the maintenance and workings of a pool.

Mr. Carlton testified that he visited the Property with Wayne Thomas on April 12, 1999, a few days prior to closing, and at that time he pulled back the new pool cover and noticed that the "coping was pulled back." He also stated he saw a crack in the pool at that time. Mr. Carlton claims Wayne Thomas told him it was too bad, but that Plaintiffs had to close on the Property despite these problems. Plaintiffs signed the Purchasers Property Inspection and Acceptance knowing there was a problem with the pool.

Mr. Carlton testified that shortly after closing on the Property, he was notified by a neighbor of an encroachment problem. He brought this problem to the attention of his realtors and was given surveys which, he testified, were his first official notice of the encroachment problem. Mr. Carlton stated he also then was informed about the sewer easement, and so he contacted Cleveland Utilities. Mr. Carlton testified that Cleveland Utilities told him they had sent a letter about the situation on the Property, but Mr. Carlton testified he never received any such letter. He later learned that the letter had been sent to Mark Williams' parents, the persons who had owned the Property before Mark and Sandra Williams. Mr. Carlton claims that he talked to someone at Cleveland Utilities regarding making repairs to the pool, but that Cleveland Utilities would not give him permission to do what was necessary to fix the problems with the pool located partially on its easement.

Madison S. Trewhitt, II, a civil engineer for Cleveland Utilities, testified that normally if someone builds a pool over one of their easements, Cleveland Utilities does not require it to be removed unless they need to do repairs to the sewer. However, Mr. Trewhitt stated that Cleveland Utilities would not give permission to do the necessary repairs to this pool unless the repair included moving the pool out of the easement.

Barry Savage, a licensed surveyor, testified as one of Plaintiffs' experts at trial. Mr. Savage first saw the Property in June of 1999 and observed the pool in the northwest corner of the Property. Mr. Savage testified he noted that a portion of the pool and the pool house were built over the sewer easement. Mr. Savage testified that at one point, the pool extended approximately 4.4 feet over the easement and at another point, 3.8 feet over the easement. Mr. Savage also noticed there was a wooden fence, which encroached on neighboring property by approximately 1.8 feet. This wooden fence since has been removed. Mr. Savage described the pool as being pushed all the way up to a chain link fence which appeared to belong to a neighbor as it was approximately six inches onto the neighboring property.

Edward L. Taylor, a structural engineer, also testified as an expert witness for Plaintiffs. Mr. Taylor viewed the Property in November of 2002. Mr. Taylor observed that the rear wall of the pool had moved approximately one inch toward the fence. He testified that the soil mass behind the pool shifted and this is what caused the pool to move. Mr. Taylor stated he also saw cracks and noted that the pool was not capable of holding water or being used. However, Mr. Taylor testified he does not know whether the pool was sound structurally in April of 1999, when Plaintiffs purchased the Property.

Plaintiffs hired Doug Matthews, owner of Matthews Pool & Spa Company, which installs and services swimming pools, to inspect the pool and give estimates either to repair the pool or to remove it and install a new pool. In May of 1999, Mr. Matthews gave an estimate of $2,953.06 to repair the pool. Mr. Matthews also gave an estimate of $36,038 to remove the old pool, take down the wooden fence, and install a new pool and an estimate of $10,000 just to remove the pool. Mr. Matthews testified that the old pool was 18' by 36', but if Plaintiffs wanted a new pool, they could put in one only 16' by 32' in order to comply with setback distances. Mr. Matthews removed the pool and filled in the area. The evidence showed that Plaintiffs paid Mr.

Matthews $7,500 to remove the pool. Mr. Matthews testified that Plaintiffs have not signed a contract with him to put in a new pool.

When questioned regarding why he had the pool removed, Mr. Carlton testified that he tried to refinance the Property, but could not get title insurance with the existing pool. Because of this, he had the pool removed. He also stated he had concerns about having standing water in an inoperable pool since he has two small children.

Defendant Mark Williams testified he and his wife moved into the house on the Property in November or December of 1992. At that time, they were renting it from Mr. Williams' parents who owned the Property. Defendants purchased the Property from Mr. Williams' parents in August of 1995. Mr. Williams testified he knew nothing about any "sewer easement encroachment" when he closed the sale of the Property to Plaintiffs in the fall of 1992.

During the time they lived on the Property, Defendants had the pool serviced by a pool company. They had the pool liner replaced in approximately 1993 and added a chlorinator and later a new cover. Mr. Williams testified he never noticed any cracks "other than perhaps wear and tear." He stated that the last time he and his family used the pool was in August of 1998 and that he did not notice any problems with the pool at that time. Mr. Williams had the pool closed by the pool company in November of 1998. Mr. Williams testified he was not informed of any problems with the pool when it was closed in November of 1998.

Mr. Williams testified regarding the sale of the Property to Plaintiffs. He explained that he and his wife signed a listing agreement for the Property with Boyd Williams in February of 1999. Mr. Williams filled out a disclosure form in connection with listing the Property for sale and explained that he checked "no" on the disclosure form regarding easements or encroachments because no problems had ever arisen that affected his ownership and no one had talked to him about any problems with an easement or an encroachment. Mr. Williams testified that at the time of closing, he did not know of any encroachments on the Property except for the fence, which he claims he had forgotten about. He testified he was aware there was a sewer easement on the Property, but he did not know its dimensions and he was not aware that the pool encroached on the sewer easement. Mr. Williams stated that prior to the closing in April of 1999, no one informed him of any problems with the pool.

At closing, Defendants gave Plaintiffs, in addition to other documents, two affidavits and a warranty deed. The first affidavit, titled Owners' Survey Affidavit and Indemnity Agreement, provides, in pertinent part, "[t]o the best of our knowledge and belief, there are no improvements, including but not limited to buildings, sheds, fences, or swimming pools, constructed on the property at the above address which encroach onto any adjoining property." The second affidavit, titled Owners Affidavit, provides, in pertinent part, "that there are no outstanding liens filed of record or unfiled claims or any other liens or encumbrances of any kind . . . ." The warranty deed states the conveyance is subject to, in addition to other things, "[e]asements and other matters as shown on plat recorded in Plat Book 3, Page 186, in the Register's Office of Bradley County, Tennessee." The referenced plat discloses the sewer easement on the Property.

The case was tried in May of 2003. The Trial Court entered an order on October 31, 2003, finding and holding, *inter alia*, that Plaintiffs had nonsuited all claims against all parties except for Defendants, that Plaintiffs were nonsuiting all issues relating to Defendants with the exception of the claim that pursuant to paragraph 12D of the sales contract Defendants warranted the pool was free of all liens and encumbrances and breached this warranty, that the Owner's Affidavit merged into the deed at closing, and that paragraph 12D of the sales contract contained no warranty. While the Trial Court stated that Plaintiffs nonsuited all claims except their claim pursuant to paragraph 12D of the sales contract, it is clear from the Trial Court's holding that issues concerning the claimed warranties under the two affidavits were tried, considered, and decided by the Trial Court. The Trial Court also stated in its memorandum opinion incorporated into the final judgment:

> anyone who back on the day the transaction took place, April 15th of 1999, anyone who bought this land was buying a piece of property that, in my opinion, is worth, because of this problem that has developed, $7,500 less than what they paid for it because partly and largely because it's going to take at least that much just to come up with a suitable home.

The Trial Court noted no specific proof regarding diminution in value was introduced at trial, but held that the proof of the cost to remove the pool could be considered as relevant to diminution in value if the Trial Court were not dismissing the case as it did. The Trial Court stated that the cost of reconstructing the pool would not constitute a special damage recoverable in a case such as this one even if there was a breach of a warranty, as Plaintiffs claim. The Trial Court dismissed the case against Defendants. Plaintiffs appeal to this Court.

## Discussion

Although not stated exactly as such, Plaintiffs raise three issues on appeal: 1) whether paragraph 12D of the purchase agreement constituted a warranty that the swimming pool would not encroach on the sewer easement, and if so, was this warranty breached; 2) whether the affidavits given by Defendants at closing constituted warranties that the swimming pool did not encroach on the sewer easement, and if so, were these warranties breached; and, 3) whether the Trial Court erred when it stated that the cost for reconstruction of the pool would not be a special damage recoverable in this case if warranties were breached.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

We first consider whether paragraph 12D of the purchase agreement constituted a warranty that the swimming pool did not encroach on the sewer easement, and if so, was this warranty breached.

-5-

As this Court discussed in *City of Memphis v. Moore*:

Tennessee recognizes the doctrine of merger whereby when "an executory contract has been entered into between the parties for the sale and purchase of real estate, and subsequently the property is conveyed by a deed to the purchaser named in the contract, that the contract of sale being merely an executory contract merges into the deed and the deed, therefore, becomes the final contract which governs and controls."

*City of Memphis v. Moore*, 818 S.W.2d 13, 15-16 (Tenn. Ct. App. 1991) (quoting *Fuller v. McCallum & Robinson, Inc.*, 118 S.W.2d 1028, 1037 (Tenn. Ct. App. 1937)) (footnote omitted); *see also e.g., McRae v. Hagaman*, No. E2004-00852-COA-R3-CV, 2004 Tenn. App. LEXIS 693 (Tenn. Ct. App. Oct. 25, 2004)[2]; *Gurley v. Hickory Withe Partners, L.P.*, No.W2002-02050-COA-R3-CV, 2003 Tenn. App. LEXIS 674 (Sept. 10, 2003), *no appl. perm. appeal filed.*

Under the doctrine of merger, paragraph 12D of the purchase agreement merged into the deed at closing. Therefore, Plaintiffs may not maintain an action for breach of warranty based upon paragraph 12D of the purchase agreement. We affirm the Trial Court's holding that paragraph 12D of the purchase agreement did not constitute a warranty breached by Defendants.[3]

We next consider whether the affidavits given by Defendants at closing constituted warranties that the swimming pool did not encroach on the sewer easement, and if so, whether these warranties were breached. We need not discuss the first affidavit, the Owners' Survey Affidavit and Indemnity Agreement, as there were no issues raised on appeal regarding improvements that encroach onto any adjoining property.

Plaintiffs claim, however, that the second affidavit, or the Owners Affidavit, constitutes a warranty against encumbrances that was breached. This affidavit warrants "that there are no outstanding liens filed of record or unfiled claims or any other liens or encumbrances of any kind . . . ." The Owner's Affidavit was not "an executory contract . . . entered into between the parties for the sale and purchase of real estate. . .", and therefore must be treated differently from the purchase agreement which did merge into the warranty deed. *Fuller*, 118 S.W.2d at 1037. As this affidavit was given at closing in conjunction with the warranty deed and was not an executory contract, we hold that it did not merge into the warranty deed. We, therefore, hold that the Owners Affidavit did constitute a warranty against

---

[2]When this Opinion was released, the time in which to file a Rule 11 application for permission to appeal to the Tennessee Supreme Court in *McRae v. Hagaman* had not yet expired.

[3]"[I]f the Trial Judge reached the right result for the wrong reason, there is no reversible error." *Shutt v. Blount*, 249 S.W.2d 904, 907 (Tenn. 1952).

encumbrances and as the sewer easement is an encumbrance and the pool sat partially on this easement, this warranty was breached by Defendants.[4]

As we have determined the Owners Affidavit did constitute a warranty against encumbrances that was breached by Defendants, we will consider whether the Trial Court erred when it held that the cost for reconstruction of the pool would not be a special damage recoverable in this case if there was a breach of warranty. We begin by determining the proper measure of damages. Our Supreme Court dealt with a case involving an alleged breach of a covenant against encumbrances in *Amos v. Carson*, stating "[s]uch a covenant 'is one which has for its object security against those rights to, or interests in, the land granted which may subsist in third persons to the diminution in value of the estate although consistent with the passing of the fee.'" *Amos v. Carson*, 210 S.W.2d 677, 679 (Tenn. 1948) (quoting 21 C.J.S., *Covenants*, § 42, page 914). Thus, the proper measure of damages here is the diminution in value.

The cost to cure a problem created by a breach of a covenant against encumbrances is not an element of damages, but may be relevant to whether there was any diminution in value due to the encumbrance. *Ellison v. F. Murray Parker Builders, Inc.*, 573 S.W.2d 161, 165 (Tenn. Ct. App. 1978). "[T]he actual or estimated cost of specific items of construction or reconstruction are not recoverable as such, but may be utilized as elements bearing upon the market value of the property in question." *Id.* Thus, the Trial Court here did not err when it stated that the cost for reconstruction of the pool would not be a special damage recoverable in this case.

We note that Plaintiffs put on no specific proof regarding diminution in value. Rather, Plaintiffs put on proof of what it cost to remove the pool and what it would cost to build a new pool. The cost of a new pool is irrelevant to the measure of damages as Plaintiffs may not be placed in a better position than what the parties bargained for, and the parties bargained for a property with an existing pool, which Plaintiffs knew at the time of closing had certain problems, not a brand new pool. However, the cost of removing the pool may be utilized as an element bearing upon diminution in value. As the cost of removing the pool was the only evidence properly presented to the Trial Court bearing on diminution in value, we hold that Plaintiffs are entitled to damages and a judgment in the amount of $7,500, which represents the diminution in value of the Property due to the encumbrance as supported by the evidence in the record before us. We also hold that Plaintiffs are entitled to prejudgment interest on this $7,500 starting from the time they incurred this expense of $7,500. This matter is remanded to the Trial Court for determination and entry of a judgment by the Trial Court based upon an award of $7,500 plus prejudgment interest on that $7,500.

---

[4]Based on the record before us, it appears Defendants never raised the issue of whether or not Plaintiffs' reliance on this warranty contained in this affidavit was reasonable given that the warranty deed specifically referenced easements as shown on the plat.

## Conclusion

The judgment of the Trial Court is affirmed, in part, and reversed, in part, and this cause is remanded to the Trial Court for further proceedings as required by this Opinion and for collection of the costs below. The costs on appeal are assessed against the Appellees, Mark L. Williams and Sandra Kay Williams.

_____
D. MICHAEL SWINEY, JUDGE